INTERCO, INC., Londontown Corp., Queen Casuals, Inc., Plaintiffs,

v.

FEDERAL TRADE COMMISSION, Secretary of Federal Trade Commission, General Counsel, Federal Trade Commission, Defendants.

Civ. A. No. 78-2486.

United States District Court, District of Columbia.

Dec. 21, 1979.

See also, D.C., 478 F.Supp. 103.

Jeffrey I. Gordon, Mayer, Brown & Platt, Washington, D. C., for plaintiffs.

Michael Sohn, W. Dennis Cross, Joanne L. Levine, Ellen Sazzman, Federal Trade Commission, Fred Cohen, Betsy Ginsberg, Dept. of Justice, Washington, D. C., for defendants.

MEMORANDUM OPINION

JOHN H. PRATT, District Judge.

This matter is again before us upon a remand of the record on May 17, 1979 by the United States Court of Appeals for the District of Columbia Circuit. The order of remand was in response to appellant's [1] motion for an injunction pending appeal and barred the release of any "documents at issue in this litigation until further order of the Court." The memorandum accompanying the remand indicated that the Findings of Fact and Conclusions of Law which we entered on April 11, 1979 should be further considered in light of a Supreme Court decision, *Chrysler Corp. v. Brown*, 441 U.S. 281, 99 S.Ct. 1705, 60 L.Ed.2d 208 (1979), which was issued six days later. Our original decision denied plaintiffs' motion for a preliminary injunction against the release of documents by the Federal Trade Commission to several state attorneys general. The pertinent facts and legal issues are set forth in that decision.[2] The parties to this action have submitted extensive supplemental memoranda which address the issues raised in the Court of Appeals memorandum. On November 9, 1979, the Federal Trade Commission, in further support of defendant's previously filed supplemental memorandum, has submitted a Statement Concern-

---

1. Appellants are Interco, Inc. and two of its subsidiaries (hereinafter referred to in the singular as "Interco").

2. See Findings of Fact and Conclusion of Law, *Interco, Inc., et al v. Federal Trade Commission*, 478 F.Supp. 103 (D.D.C.1979).

ing Nonpublic Disclosures to State Attorneys General of Information Obtained by the Commission with supporting appendices, affidavits and attachments. (hereinafter referred to as Commission Statement).

The Court of Appeals memorandum specifically referred to a need for an evaluation of three issues which arose from the *Chrysler* decision: (1) whether the documents at issue in this litigation contain information which is protected from disclosure under a criminal statute, 18 U.S.C. § 1905; (2) if these documents contain the sort of information protected under 18 U.S.C. § 1905, whether there is legal authority for the release of the documents; and (3) the age and contents of the documents as determining "the potential injury that the release of the documents could cause Interco." After reconsidering our previous denial of plaintiffs' motion for a preliminary injunction in light of the decision in *Chrysler* and the Court of Appeals May 17, 1979 memorandum, we are persuaded that the documents at issue in this litigation are releasable to state attorneys general under the authority of § 6(f) of the Federal Trade Commission Act, 15 U.S.C. § 46(f). We reach this decision regardless of whether the documents may otherwise fall within 18 U.S.C. § 1905.[3]

### I. *Chrysler Decision*

The Supreme Court's decision in *Chrysler* addressed a "reverse FOIA" situation in which a private party sought to enjoin the release of documents by an agency. The plaintiff there claimed that the documents at issue could not be released because they were covered by the language of the (b)(4) exemption to FOIA, 5 U.S.C. § 552(b)(4) and that it therefore would have been an abuse of agency discretion to release them. The court in *Chrysler* held that the FOIA, 5 U.S.C. § 552 does not create a private right of action to enjoin an agency from releasing documents within the coverage of exemption (b)(4) (trade secrets and commercial or financial information obtained from a person and privileged and confidential). The court, however, held that a private party could review an agency's decision to release (b)(4) documents under § 10(e) of the Administrative Procedure Act, 5 U.S.C. § 706(2)(A). This section authorizes a court to set aside agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."

In its ruling on the merits, the Supreme Court held that whether to assert a FOIA exemption was not a mandatory agency obligation but was instead a matter resting within the discretion of the agency. The court then ruled that it may be an abuse of agency discretion to release documents which are covered by the Trade Secrets Act, 18 U.S.C. § 1905, which makes it a criminal violation for an officer or employee of an agency to disclose information concerning "trade secrets," "confidential statistical data," and the "amount or source of any income, profits, losses or expenditures . . . ."[4] The court recognized, as does the Trade Secrets Act, that documents which do fall within the coverage of the Act may nevertheless be released if otherwise "authorized by law."

---

**3.** We accordingly find it unnecessary to address two of the three issues raised in the Court of Appeals memorandum of May 17, 1979: (1) whether the documents at issue in this litigation contain information which is protected from disclosure under 18 U.S.C. § 1905; and (2) whether release of the documents would in fact cause competitive injury to plaintiffs.

**4.** The text of the Trade Secrets Act, 18 U.S.C. § 1905 provides as follows:

Whoever, being an officer or employee of the United States or of any department or agency thereof, publishes, divulges, discloses, or makes known in any manner or to any extent not *authorized by law* any information coming to him in the course of his employment or official duties or by reason of any examination or investigation made by, or return, report or record made to or filed with, such department or agency or officer or employee thereof, which information concerns or relates to the *trade secrets*, processes, operations, style of work, or apparatus, or to the identity, *confidential statistical data, amount or source of any income, profits, losses, or expenditures of any person, firm, partnership, corporation,* or association; or permits any income return or copy thereof or any book containing any abstract or particulars thereof to be seen or examined by any person except as provided by law; shall be fined not more than $1,000, or imprisoned not more

## II.  Impact of Chrysler Decision

The Supreme Court decision in *Chrysler* is consistent with our previous ruling[5] that the Federal Trade Commission was not required to assert exemption (b)(4) for those Interco documents which the Federal Trade Commission planned to release to state attorneys general.  Holding that the FOIA is exclusively a disclosure statute affording no private cause of action to enjoin disclosure, the decision implicitly recognized that an agency may have the authority to release documents within the coverage of exemption (b)(4) if those documents are outside the scope of the Trade Secrets Act, 18 U.S.C. § 1905.[6]  The Court of Appeals in its memorandum has recognized such authority in § 6(f) of the Federal Trade Commission Act, 15 U.S.C. § 46(f) to release to the public all documents other than trade secrets and customer lists.[7]  As stated in the court's memorandum, "if the [Interco] documents involved do not contain either trade secrets or names of customers, the Commission in its discretion may release them to the public as well as to state attorneys general."  *Interco v. Federal Trade Commission*, No. 79–1424 (D.C.Cir. May 17, 1979).  The *Chrysler* decision as interpreted by the Court of Appeals thus authorizes the Federal Trade Commission to release all Interco documents other than trade secrets or names of customers.  The Court of Appeals, however, left open the question of whether there is authority consistent with the Trade Secrets Act for the release of trade secrets and names of customers to state attorneys general.[8]  It is this question which remains for our decision on remand of the record.  We answer it below by holding that § 6(f) of the Federal Trade Commission Act, 15 U.S.C. § 46(f) authorizes the release of all Interco documents, whether or not they include trade secrets and customer lists, to state attorneys general who provide reasonable assurances that the documents will be held in confidence.[9]

## III.  Authorization for Release of Documents Under Section 6(f) of The Federal Trade Commission Act

### A.  The Confidential Commercial and Financial information sought to be released does not include "trade secrets" or "names of customers"

█  In our decision of April 11, 1979 denying Interco's motion for a preliminary

---

than one year, or both; and shall be removed from office or employment. (Emphasis supplied).

**5.**  *See* Conclusions of Law, at 4, *Interco v. Federal Trade Commission*, 478 F.Supp. 103 (D.D.C.1979).

**6.**  The Supreme Court expressly declined to decide whether the scope of exemption (b)(5) was coextensive with the scope of the Trade Secrets Act.  *Chrysler Corp. v. Brown, supra* at 319 n. 49.  However, the Court's holding that an agency has the discretion whether or not to invoke exemption (b)(4) but does not have the discretion to release documents protected by the Trade Secrets Act implicitly indicates that the coverage of exemption (b)(4) must be broader than the coverage of the Trade Secrets Act.  Otherwise, it would be meaningless to rule that an agency has discretion to release documents within the scope of exemption (b)(4) particularly when the Supreme Court has held that exemption (b)(4) does not provide authorization for the release of documents within the scope of the Trade Secrets Act.

**7.**  Section 6(f) of the Federal Trade Commission Act, 15 U.S.C. § 46(f) provides as follows:

(f) *To make public* from time to time such portions of the information obtained by it hereunder, *except trade secrets and names of customers*, as it shall deem expedient to the public interest; and to make annual and special reports to the Congress and to submit therewith recommendations for additional legislation; and to provide for the publication of its reports and decisions in such form and manner as may be best adapted for public information and use.  (Emphasis supplied).

**8.**  The Court of Appeals in its memorandum stated that "we do not discern how the Federal Trade Commission can claim such an obligation, or indeed authorization, as to disclosure to state attorneys general.  If there is such authorization, the basis for it should be articulated."  *Interco v. Federal Trade Commission, supra* at 2.

**9.**  In our Findings of Fact and Conclusions of Law, we have found that there is adequate assurance that confidential documents will not be released by state attorneys general to the public.

injunction, we held that § 6(f) of the Federal Trade Commission Act, 15 U.S.C. § 46(f), authorized the Commission to make non-public disclosures for law enforcement purposes, of confidential information, including trade secrets and names of customers. More specifically, we found that the release of such documents "to state attorneys general for the purpose of investigating illegal competitive practices is not a release to the 'public' within the meaning of either 5 U.S.C. § 552(a) and 15 U.S.C. § 46(f) where state attorneys general have given reasonable assurances that these documents will not be *generally released to the public*," citing *Ashland* and *Exxon* cases. We did not determine whether such documents, in fact, contained "trade secrets" or "names of customers." The record showed merely that the parties had agreed that some of the material supplied to the Commission was confidential information within the meaning of 5 U.S.C. § 552(b)(4). *See* Findings of Fact at 11. Instead, we emphasized the non-public nature of the disclosure, irrespective of the contents of the documents.

To place this litigation in context, the Commission, after an extensive investigation commenced in August, 1976 of Interco's practices in the footwear and apparel industries to determine possible antitrust violations, in July, 1978, accepted a proposed consent order with Interco and placed it on the public record for comment. At the same time, in order to facilitate comment on the proposed order, the Commission made public by placing in the public file the bulk of the documents in the footwear file. Documents in the apparel file were not placed in the public record because of certain on-going investigations of other apparel companies. It was at this point that various state attorneys general, wishing to determine whether Interco had violated the antitrust laws of their respective states, asked for the disclosure, on a confidential basis, of documents in the non-public files. In August, 1978, the Commission's general counsel, acting pursuant to delegated authority (16 C.F.R. § 4.11(b)) and after determining that access was in accord with Commission policy to cooperate with other government agencies engaged in law enforcement (16 C.F.R. § 4.6), indicated his intention to make the disclosure requested. Interco, in a complaint filed on September 6, 1978 in the United States District Court for the Eastern District of Missouri and transferred on December 29, 1978 to this court, sought to enjoin the disclosure to any state attorney general of "general confidential commercial and financial information" in the Commission's files relating to Interco.[10] (Verified Complaint, p. 13, ¶ 5). In support of its complaint, plaintiff relied upon § 6(f) of the Federal Trade Commission Act, the Freedom of Information Act, 5 U.S.C. § 552(b)(4) and the federal criminal statute, 18 U.S.C. § 1905. (Verified Complaint, p. 11, ¶ 23).

In its motion for a preliminary injunction filed January 31, 1979, Interco describes the information the disclosure of which it sought to enjoin as follows: "(1) customer names and trade secrets; (2) other confidential business and financial information; and (3) intra-agency memoranda, inter-agency memoranda, interview reports, and other documents which the FTC has previously determined not to release in response to other FOIA requests." (Memorandum in Support of Motion for a Preliminary Injunction, p. 9). Interco devotes the bulk of its ensuing argument on the non-disclosure of trade secrets and names of customers; lesser space concerns confidential information and other non-public information. Interco's emphasis on "trade secrets and names of customers" undoubtedly reflects the fact that the Commission under § 6(f) has broad authority to disclose other confidential information "as it shall deem expe-

---

**10.** "Confidential commercial and financial information" was defined to include "names of customers and dealers, identifying information relating to plaintiffs' customers and dealers (i.e. street addresses and other geographic information), information concerning plaintiffs' and their dealers' sales volume, costs, inventories, amount and source of income, profits, losses, or expenditures, trade secrets and other information from the Commission previously withheld from disclosure to FOIA requestors." (Verified Complaint, p. 13).

dient in the public interest . . . ." In response to Interco's motion, the defendant's position, in substance, is and has always been that Interco has failed to prove that information in the files at issue contains "trade secrets" or "names of customers" and because the proposed limited disclosure to state attorneys general does not violate § 6(f).

Following remand by the Court of Appeals on May 17, 1979, the defendant's general counsel concluded that his prior decision to make release to state attorneys general "should be referred to the Commission for reconsideration in the light of *Chrysler* and the Court of Appeals' order and suggested that the district court defer making any findings until the Commission reconsidered the matter and made a statement." We accepted such suggestion.

On November 9, 1979, the Commission filed a lengthy expression of policy entitled Statement Concerning Nonpublic Disclosures to State Attorneys General of Information Obtained by the Commission with supporting appendices, affidavits, and attachments. There was also submitted to us for *in camera, ex parte* examination unexpurgated versions of Attachments A–F to the Affidavit of Richard Gately, Appendix B to the Commission Statement. Mr. Gately was managing attorney on the Commission's footwear investigation. The Commission Statement is part of the record.

In affirming the general counsel's determination to release the information in dispute, the Commission summarized its ultimate position in the following language:

Specifically, we conclude that commercial and financial information about Interco, including information pertaining to Interco's sales, is not a 'trade secret' within the meaning of the exception to the authority granted by Section 6(f) and that identities of stores carrying Interco's footwear and apparel products are not 'names of customers' within the meaning of that exception. Accordingly, we do not reach the question of the Commission's authori-

ty to make nonpublic disclosure of trade secrets or names of customers.

Commission Statement, p. 5.

Prior to issuing its Statement and in order to determine what might be confidential in the footwear and apparel files, Commission staff on July 16, 1979 requested Interco to respond to the following questions:

1. What, if any, Interco documents contain new ideas for new products or merchandising strategies?

2. What, if any, Interco documents contain secret formulas, technical processes or the like?

3. To what extent are the sales figures for which Interco sought confidential treatment the same or similar to those disclosed in Interco's 1978 Annual Report?

4. What, if any, Interco documents contain names of customers that cannot be identified through publicly available sources such as telephone books, other directories, or advertisements?

5. What, if any, Interco documents reveal expansion plans which you believe are sensitive, and which have not yet been executed?

6. What documents or portions of Interco documents in the apparel investigation do not contain information comparable to that placed on the public record in the footwear investigation?

Although it had supplied the greater bulk of these documents and presumably knew their contents, Interco on July 20, 1979 declined to make this additional submission. As a consequence, Commission staff made general examinations of the footwear and apparel files and has set forth the results (Gately and Braun affidavits, Appendices B and C to Commission Statement). The Commission's finding as to the contents of the files is contained in Appendix A to the Commission Statement. The Commission Statement of some 44 pages concluded with the following:

To summarize our conclusions, we find that new product ideas and merchandizing plans and strategies do not exist in the files or are not confidential because they have become public over time, were revealed in the public record in the footwear file, or relate to practices that are prohibited under the consent order. Annual sales volumes may have some benefit to competitors but is too old to cause substantial injury to Interco. Identities of Interco's retailers are publicly available and information about them is not detailed, is old, and possibly available to competitors. Annual reports, promotional materials, and the like are in the public domain and cannot harm Interco. Information supplied to Commission staff by third parties cannot be considered confidential because those persons are free to disseminate it to others. Finally, information about Interco in the Commission's internal memoranda is dated and/or in the public domain.

Commission Statement, pp. 42–3.

We accept the Commission Statement and its interpretation of the terms "trade secrets" and "names of customers" as used in § 6(f). After consideration of the appendices, affidavits and attachments to said Statement, we find that the documents for which release is sought do not contain "trade secrets" or "names of customers." We further find that to the extent that such documents contain confidential business and financial information, their age is such (1976 and before) [11] that their disclosure will not cause any significant competitive injury and, in any event, is "expedient in the public interest."

B. Assuming *arguendo* that the documents contain "trade secrets" and "names of customers," their release to state attorneys general under commitments of confidentiality is not a "public disclosure."

█ Section 6(f) of the Federal Trade Commission Act, 15 U.S.C. § 46(f) authorizes the Federal Trade Commission "[t]o make public from time to time such por-

tions of the information obtained by it hereunder, except trade secrets and names of customers, as it shall deem expedient in the public interest . . .." This statute does not on its face authorize the release of trade secrets and names of customers to state attorneys general but not to the general public. However, two recent judicial decisions interpreting § 6(f) and the legislative history underlying § 6(f) clearly demonstrate that the Commission has the authority under this section to make nonpublic releases for legislative or law enforcement purposes.

1. Judicial Decisions

In *Ashland Oil v. FTC*, 548 F.2d 977 (D.C. Cir.1976), the Court of Appeals for this Circuit upheld the authority of the Federal Trade Commission to transmit confidential information to Congress. The court did not reach its decision upon the ground that the Commission was obligated to comply with Congressional requests for confidential documents or with the subsequently issued Congressional subpoena. The court stated: "Therefore, we express no opinion on FTC's *obligations* in response to Congressional requests." (Emphasis in original). *Id.* at 982. *Ashland Oil* was based on the view that § 6(f) precludes only public disclosures of trade secrets and not on the Commission's obligation to provide information to the Congress. *Ashland Oil v. FTC, supra* at 979–81, n. 6. As recognized in a subsequent decision in *Exxon Corp. v. FTC*, 589 F.2d 582 (D.C.Cir.1978), "[t]he question in *Ashland Oil* simply was whether or not the FTC was authorized to divulge trade secrets *at all*, in light of 15 U.S.C. § 46(f)'s prohibition against '*making public*' such secrets." *Id.* at 586 n. 4. (Emphasis supplied). The Court of Appeals in *Exxon*, like the District Court in *Ashland*, focused primarily upon whether a disclosure to Congress would make "public" confidential documents and thereby impair the value of these documents. *Exxon Corp. v. FTC, supra* at 582, 586, n. 4; *Ashland Oil v. FTC*, 409 F.Supp.

[11.] Gately and Braun Affidavits, Appendices B & C, attached to Commission Statement.

297, 302–03, 308–09 (D.D.C.1976).[12] This focus is endorsed by decisions of the Commission and the Court of Appeals for the Second Circuit which suggest that the § 6(f) authorizes disclosures other than public disclosures of trade secrets and customers names. *H. P. Hood & Sons, Inc.*, 58 F.T.C. 1184, 1185–86 (1961); *FTC v. Tuttle*, 244 F.2d 605, 616 (2d Cir. 1957), *cert. denied*, 354 U.S. 925, 77 S.Ct. 1379, 1 L.Ed.2d 1436 (1957). The clear inference to be drawn from these decisions is that § 6(f) should not be read, as Interco suggests, to limit the discretion of the Commission to make non-public disclosures.

### 2. Legislative History

The legislative history of § 6(f) contains compelling evidence that this section was intended not merely as a limitation upon public disclosure of trade secrets and customer names but as implicit authority for the nonpublic disclosure of documents for law enforcement purposes. The legislative history underlying the passage of this section reflects two mutually compatible purposes: the need to safeguard corporations from the competitive injuries which result from the disclosure of trade secrets and the need for the disclosure of information which could be used to correct anticompetitive business practices.

Both the Senate and House bills imposed certain restrictions upon publication of trade Secrets. *See* H.R.Rep. No. 1142, 63d Cong., 2d Sess. (1914) (conference report); H.R.Rep. No. 533, 63d Cong., 2d Sess. 4, 15 (1914); S.Rep. No. 597, 63d Cong., 2d Sess. 15 (1914). The House bill, however, did not limit the Commission's authority to disclose investigatory information. *See* H.R. 15613, §§ 3, 10, 11, 14, 63d Cong., 2d Sess. (1914). The House Report indicated that Commission investigations "may be made public entirely in the discretion of the Commission." The House bill's limitation upon the disclosure of trade secrets was narrowly limited to data contained in special reports which were to be submitted to the Commis-

sion. *See* H.R. 15613, § 17, 63d Cong., 2d Sess. (1914).

The Senate bill conferred broad authority upon the Commission to disclose information, including trade secrets, without regard to whether that information was obtained from an investigation. Under § 3(d) of S. 4160, 63d Cong., 2d Sess. (1914), the Commission could "make public, in the discretion of the Commission, any information obtained by it . . . except so far as may be necessary to protect trade processes, names of customers, and other such matter *as the commission may deem not to be of public importance* . . .." (Emphasis supplied). The bill also gave the Commission unrestricted power to make public reports of its investigations of compliance with antitrust decrees and required it to make public its findings supporting its adjudicative conclusions that antitrust laws had been violated. *Id.* at § 3(f), 5. Although disclosure provisions of the Federal Trade Commission Act as finally enacted more closely resemble the House bill, neither branch of Congress appeared to consider the final phrasing of the Commission's publicity authority to be material. *See* Handler, *The Constitutionality of Investigation by the Federal Trade Commission*, pt. I, 28 Colum.L.Rev. 708, 729–30, n. 61 (1928). *See also* 50 Cong.Rec. 14764–67, 14769 (1914) (remarks of Senators Cummins and Newlands indicating that the conference version did not significantly change the substance of the bill). It would therefore be an erroneous construction of the Act to interpret it to confer less authority upon the Commission to disclose confidential documents than that provided by the predecessor bills which led to the passage of the Act.

The legislative history of § 6(f) evinces a clear distinction between the Commission's authority to make general public releases of trade secrets and customer names and its authority to release information obtained pursuant to investigation of anticompetitive behavior. This distinction is consistent with the Commission's mission to combat

---

**12.** The Court of Appeals in *Ashland Oil* affirmed the District Court's decision essentially for the reasons stated in the District Court's opinion. *Ashland Oil v. FTC*, 548 F.2d at 979.

anticompetitive business practices without prejudice to the competitive position of a particular company by the release of its confidential information.

This rationale is demonstrably reflected in the factual situation presented by the instant case. Here the state attorneys general have assured the Commission that they will abide by its conditions as to future disclosure. The presumption that government officials will behave responsibly and protect confidential information,[13] which was applied in *Ashland Oil* and *Exxon* to the Congress applies no less to state attorneys general, who are sworn officials charged with the duty of law enforcement. Even this presumption of regularity has been applied to officials of foreign governments. *See Guerra v. Guajardo,* 466 F.Supp. 1046, 1059 (S.D.Tex.1978). It is recognized that Interco has a competitive interest in preventing the release of confidential documents even though such documents are now old, all relating to a period prior to September, 1976.[14] Yet, the public interest in the enforcement of antitrust laws is entitled to the most serious consideration and would be thwarted if the Commission could not in a confidential release of documents to state attorneys general provide law enforcement authorities with the information necessary to prosecute possible violations of those laws. We find that the Commission therefore did not abuse its discretion when it determined that it would release the Interco documents to state attorneys general under assurances of confidentiality.[15] This non-public release would be "authorized by law" within the meaning

of 18 U.S.C. § 1905 even if the documents contain trade secrets or customer lists.

We find no reason to modify our denial of plaintiffs' motion for a preliminary injunction. As indicated above, such denial was consistent with the Supreme Court's decision in *Chrysler Corp. v. Brown,* 441 U.S. 281, 99 S.Ct. 1705, 60 L.Ed.2d 208 (1979).

We recommend that the Court of Appeals terminate its injunction in its entirety. *See* court's order in *Martin-Marietta v. FTC,* No. 79–1081 (D.C.Cir.1979).

---

**13.** *See also Freeman v. Seligson,* 405 F.2d 1326, 1348–52 (D.C.Cir.1968) where the Secretary of Agriculture who was authorized under § 8 of the Commodity Exchange Act to publish results of investigations as he may deem of interest to the public, except trade names and names of customers, was not prohibited from making such disclosure in response to a judicial subpoena in bankruptcy litigation. The court held that this was not a public disclosure prohibited by the Act and implied that attorneys as "sworn officers of the court" should be trusted to handle the information properly.

**14.** Since it has consistently declined to waive the applicable states' statutes of limitations,

Interco also has an interest in pursuing this litigation to the limit.

**15.** The Court of Appeals memorandum did not direct us to consider whether the Commission abused its discretion when it determined to provide its Interco documents to state attorneys general. As should be apparent from the above discussion, the FTC's decision was clearly not "arbitrary, capricious, an abuse of discretion or otherwise not in accordance with the law" within the meaning of § 10(e) of the Administrative Procedure Act, 5 U.S.C. § 706(2)(A).