# Applicability of Trade Secrets Act to Intra-Governmental Exchange of Regulatory Information

The disclosure to certain federal financial regulatory agencies of propriety information of the Office of Federal Housing Enterprise Oversight obtained from the finance institutions it regulates would be "authorized by law" within the meaning of the Trade Secrets Act and therefore would not violate that Act's prohibitions against unauthorized agency disclosures of trade secrets or other confidential business information.

April 5, 1999

MEMORANDUM OPINION FOR THE GENERAL COUNSEL
OFFICE OF FEDERAL HOUSING ENTERPRISE OVERSIGHT

This responds to your request for our opinion regarding the applicability of the Trade Secrets Act, 18 U.S.C. § 1905 (Supp. II 1996) ("TSA"), to the Office of Federal Housing Enterprise Oversight's ("OFHEO") proposed provision to other federal agencies of certain proprietary information that it receives in carrying out its statutory responsibilities.[1] For reasons set forth below, we conclude that the TSA does not prohibit the inter-agency, official purpose disclosures outlined in your request.

## I.

OFHEO is a federal agency, within the Department of Housing and Urban Development, created by the Federal Housing Enterprises Financial Safety and Soundness Act of 1992, Pub. L. No. 102–550, 106 Stat. 3941, 3944, (codified at 12 U.S.C. §§ 4501–4641 (1994)) ("FHE Act" or "Act"). Its purpose is, inter alia, to ensure that the Federal National Mortgage Association (Fannie Mae) and the Federal Home Loan Mortgage Corporation (Freddie Mac) (collectively, "the Enterprises") "are adequately capitalized and operating safely" in accordance with governing legislation. See 12 U.S.C. § 4513(a). The Enterprises are the nation's largest housing finance institutions. OFHEO's oversight and regulatory responsibilities with respect to them are similar to those exercised over banks and financial institutions by agencies such as the Federal Deposit Insurance Corporation and the Office of the Comptroller of the Currency. See OFHEO Letter at 1.

In carrying out its responsibilities under the Act, OFHEO from time to time requires the Enterprises to submit various reports on their financial condition and

---

[1] See Letter for Lee J. Radek, Chief, Public Integrity Section, Criminal Division, Department of Justice from Anne E. Dewey, General Counsel, Office of Federal Housing Enterprise Oversight (June 5, 1998) ("OFHEO Letter"). The Attorney General has delegated her authority to provide legal opinions for departments and agencies of the executive branch to this Office and, accordingly, your request has been forwarded to us for disposition. See 28 U.S.C §§ 510–513 (1994), 28 C.F.R. § 0.25(a) (1997).

operations. *See* 12 U.S.C. § 4514. These reports, as well as other regulatory information obtained from the Enterprises by OFHEO in performing its duties, sometimes include sensitive proprietary information. OFHEO Letter at 2.

As explained in your letter, OFHEO desires to exchange regulatory information obtained from the Enterprises (including some proprietary information) with certain other federal financial regulators in order to facilitate "fulfilling its safety and soundness mission." *Id.* at 2. For purposes of this opinion, therefore, we assume that these arrangements will materially enhance OFHEO's performance of its statutory responsibilities. If such disclosures do take place, we are advised that the governmental recipients of the information would be required to maintain its confidentiality and would, of course, be subject to the provisions of the TSA in their own handling and maintenance of that information. *See id.* at 2.

The TSA prohibits officers and employees of federal agencies from publishing or disclosing trade secrets and other confidential business information "to any extent not authorized by law." 18 U.S.C. § 1905.[2] Because some of the proprietary information OFHEO wishes to share with other federal financial regulators would be of the type otherwise covered by the TSA, you seek the Department's legal opinion whether the proposed provision of such information to other federal agencies under the circumstances outlined in your letter would violate the TSA.

## II.

There is significant precedential support for the view that the kind of disclosures described in your letter would not violate the TSA. A number of federal court opinions have expressed the view that the TSA applies only to the *public* disclosure of covered information and does not apply to official intra-governmental disclosures of such information. Additionally, two opinions of this Office have concluded that the TSA does not prohibit the exchange of trade secret or proprietary information between federal agencies for lawful governmental purposes — at least where such disclosures are authorized by the Paperwork Reduction Act

---

[2] The TSA provides in pertinent part as follows·

Whoever, being an officer or employee of the United States or of any department or agency thereof, *any person acting on behalf of the Office of Federal Housing Enterprise Oversight,* . publishes, divulges, discloses, or makes known in any manner or to any extent not authorized by law any information coming to him in the course of his employment or official duties or by reason of any examination or investigation made by, or return, report or record made to or filed with, such department or agency or officer or employee thereof, which information concerns or relates to the trade secrets, processes, operations, style of work, or apparatus, or to the identity, confidential statistical data, amount or source of any income, profits, losses, or expenditures of any person, firm, partnership, corporation, or association,

shall be fined under this title or imprisoned not more than one year, or both, and shall be removed from office or employment.

18 U S C § 1905 (emphasis added) The underscored phrase, extending the TSA to cover disclosures by "person[s] acting on behalf of the [OFHEO]," was added by Pub L No. 102–550, tit XIII, § 1353, 106 Stat at 3970 As shown by the Senate Report on a contemporaneous bill of the same Congress containing the exact same provision, the apparent purpose of this addition to the statute was simply to "subject[ ] any consultant to the [OFHEO] to the same criminal penalties for release of confidential information as government employees " S. Rep. No. 102–282, at 53 (1992).

of 1980, Pub. L. No. 96–511, 94 Stat. 2812 ("PRA"), *see* 44 U.S.C. § 3510(a) (Supp. I 1995), or by any other federal statute, either explicitly or implicitly. An additional opinion of this Office, moreover, emphasizes the broader principle — grounded on the President's executive powers set forth in Article II of the Constitution — that the exchange of commercial regulatory information among federal government agencies for legitimate government purposes is presumptively lawful, and that only explicit statutory language prohibiting such disclosure can overcome that presumption.[3] These opinions would suggest the conclusion that the TSA does not apply to any authorized inter-agency disclosures. It is not necessary, however, for us to reach that issue, because we conclude that the disclosures at issue here would be "authorized by law" within the meaning of the TSA itself. At a minimum, the precedents call for a generous reading of statutes that may implicitly authorize inter-agency disclosures such as those in question, and we thus read the FHE Act as providing such authority here, as we discuss in Part II.C, below.

## A.

In *Emerson Elec. Co. v. Schlesinger*, 609 F.2d 898 (8th Cir. 1979), the Eighth Circuit considered whether the Equal Employment Opportunity Commission and the Department of Labor's Office of Federal Contract Compliance could lawfully exchange certain information and records that those agencies had gathered from regulated companies reflecting the companies' compliance with federal employment discrimination laws. The court assumed arguendo that the information in question was of the type protected by the TSA. Based upon the pertinent "pronouncements of Congress, the President and the agencies" — notably, certain statutory provisions authorizing inter-agency cooperation, *see* 42 U.S.C. § 2000e–4(g)(1) (1994) — the court first concluded that the particular exchanges of information proposed would be "authorized by law" within the meaning of the TSA even if that act were otherwise applicable to the inter-agency exchanges. 609 F.2d at 907. The court then proceeded to elaborate upon the proper relationship between inter-governmental information exchanges and the TSA.

> It is again worth emphasizing that the disclosure contemplated . . . is between two agencies, both of which are charged with the task of eliminating employment discrimination. *We seriously doubt whether § 1905 was intended to prohibit any interagency information transfers. Since the Federal Reports Act, 44 U.S.C. §§ 3501–3512, directly controls exchanges between agencies, it appears that*

---

[3] An example of such an explicit statutory provision is contained in the Privacy Act. *See* 5 U S C § 552a(b) (1994) (providing that "[n]o agency shall disclose . . . to another agency" personal records covered by the Privacy Act, subject to listed exceptions). The category of sensitive personal records protected by the Privacy Act is not implicated by the disclosure of commercial regulatory information proposed here

> *§ 1905 was designed to apply only to public disclosures of trade*
> *secret material.*

*Id.* at 907 (emphasis added).

In her separate opinion in *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986 (1984), Justice O'Connor expressed a similar view, observing: "The question of inter-agency use of trade secrets before 1972 is more difficult *because the Trade Secrets Act most likely does not extend to such uses.*" *Id.* at 1023 (O'Connor, J., concurring in part and dissenting in part) (emphasis added). Other courts have also expressed a restrictive interpretation of the TSA in this respect. *See Tri-Bio Laboratories, Inc. v. United States*, 836 F.2d 135, 141 n.7 (3d Cir. 1987) (*"Because the Trade Secrets Act . . . prohibits only public disclosure* of application data, it does not bar internal agency use of submitted data.") (emphasis added), *cert. denied*, 488 U.S. 818 (1988); *Interco, Inc. v. FTC*, 490 F. Supp. 39, 40 (D.D.C. 1979) (documents including trade secrets could be disclosed by FTC to State Attorneys General who provide reasonable assurances of confidentiality because such disclosure would be "authorized by law" under a broad reading of section 6(f) of the Federal Trade Commission Act). *Cf. United States v. Wallington*, 889 F.2d 573, 579 (5th Cir. 1989) (in order to avoid arbitrary enforcement, court narrowly construed TSA to apply only to "confidential" information and "further defined 'confidential' to require *at least* that the government agency in question have an official policy that the information *not* be disclosed (or that nondisclosure be mandated by statute or regulation)").[4]

This Office invoked the above-quoted interpretation of the court in *Emerson Electric* in reaching the conclusion that, in light of the Paperwork Reduction Act, the TSA did not prohibit the Department of Justice from sharing proprietary information obtained from companies under the National Cooperative Research and Production Act ("NCRPA"), 15 U.S.C. § 4305(d) (1994), with other federal departments and agencies. *See* Memorandum for Anne Bingaman, Assistant Attorney General, Antitrust Division, from Walter Dellinger, Assistant Attorney General, Office of Legal Counsel, *Re: Sharing of Materials with other Federal Agencies* (May 31, 1994) ("1994 Opinion"). As we noted in that opinion:

> We have also considered whether provision of the information
> to other federal agencies might be prohibited by the Trade Secrets
> Act (TSA), 18 U.S.C. § 1905, which prohibits federal officials from

---

[4] *But see Shell Oil Co. v. Department of Energy*, 477 F. Supp 413, 419 (D Del 1979), *aff'd*, 631 F.2d 231 (3d Cir. 1980), *cert denied*, 450 U S 1024 (1981), where the court assumed, without deciding, that the TSA applies to inter-agency disclosures, after stating "While a number of opinions of the Attorney General have suggested, largely based on practical considerations, that [the TSA] was not intended to apply to inter-agency transfers of proprietary information, no court appears to have so held " The *Shell Oil* opinion was issued before the Eighth Circuit's opinion in *Emerson Electric* In any event, the *Shell Oil* court went on to hold that the Department of Energy was "authorized by law" to disclose the proprietary data in question to any federal agency with a legitimate need for such information pursuant to the Federal Energy Administration Act, 15 U S C §§ 761–790h (1994)

disclosing, ''in any manner or to any extent not authorized by law,'' trade secrets or similar information in the possession of federal agencies. If the exchanges of information are not prohibited by the NCRPA or the [Hart-Scott-Rodino Antitrust Improvements Act], we believe they would be authorized by 44 U.S.C. § 3510 (part of the Paperwork Reduction Act (PRA)), which provides that ''an agency may make available to another agency, information obtained pursuant to an information collection request if the disclosure is not inconsistent with any applicable law.'' The Eighth Circuit held the TSA inapplicable to inter-agency information transfers in *Emerson Electric Co. v. Schlesinger,* 609 F.2d 898, 907 (1979), stating, ''Since the Federal Reports Act (since supplanted by the PRA, as quoted above) directly controls exchanges between agencies, it appears that § 1905 was designed to apply only to public disclosures of trade secret material.''

1994 Opinion at 3 n.4.

We expressed similar views in a 1981 opinion concluding that confidential trade information obtained by the Secretary of Commerce pursuant to the Export Administration Act (''EAA'') may be lawfully released to federal law enforcement and intelligence agencies. *See Disclosure of Information Collected under the Export Administration Act,* 5 Op. O.L.C. 255 (1981). Although that opinion primarily concerned interpretation of the EAA and the Paperwork Reduction Act, it also rejected the Commerce Department's argument that inter-agency disclosure of the information would violate the TSA:

> We do not agree with the Department of Commerce that 18 U.S.C. § 1905, which prohibits the disclosure of confidential trade information unless authorized by law, would bar interagency disclosure because, assuming no other statutory prohibition against disclosure, § 3510 of the Paperwork Reduction Act would authorize the disclosure. 44 U.S.C. § 3510.

*Id.* at 261 n.3.[5]

Another opinion of this Office, although not directly addressing the TSA, lends further general support to the view that federal statutes prohibiting *public* disclosure of proprietary regulatory information do not prohibit the exchange of such information between federal agencies for legitimate government purposes. *See Inter-Departmental Disclosure of Information Submitted Under the Shipping Act*

---

[5] The opinion further observed. ''The question whether 18 U.S C § 1905 applies to intra-governmental transfers . . has never been resolved.'' *Id* at 262 n 6. Although it did not seek to resolve that question, the opinion did establish a framework for construing the TSA's phrase ''authorized by law'' that provides the basis for our analysis here. *See* Part II.C, *infra.*

*of 1984*, 9 Op. O.L.C. 48 (1985) ("Shipping Act Opinion"). There, we concluded that the confidentiality provisions of section 6(j) of the Shipping Act, 46 U.S.C. app. §§ 1701–1719 (Supp. II 1984),[6] do not prohibit the Federal Maritime Commission from disclosing Shipping Act information to other federal government agencies. *Id.* at 48–49. In reaching that conclusion, we discussed the broader constitutional considerations that may be implicated by legislative restrictions on the disclosure of regulatory information between executive branch departments and agencies for official purposes. Referring to "the general presumption that information obtained by one federal government agency is to be freely shared among federal government agencies," and after noting that "[i]t is axiomatic that all information and documents in the possession of Executive Branch agencies are within the control of the President as the head of the Executive Branch," *id.* at 52–53, we continued:

> We believe it follows from these general constitutional principles that a decision by Congress to restrict the flow of information among federal agencies when such information relates to the performance of the official duties of these agencies must be executed by legislation that leaves no doubt as to Congress' intent. Particularly regarding the development by the President of his foreign policy, it would be untenable to read into the statute at issue here an implied intent to deny to those subordinates of the President charged with the formulation of foreign policy those documents and information deemed relevant to that formulation.

*Id.* at 53. We therefore concluded that section 6(j) of the Shipping Act, as its language indicates, prohibits only *public* disclosure of information obtained under that Act and that such information may be disclosed for official purposes to other federal agencies or executive branch departments.

The Trade Secrets Act would not appear to satisfy the standards of specificity and clarity described in our Shipping Act opinion — i.e., "legislation that leaves no doubt as to Congress' intent" — as necessary for legislation to prohibit the official exchange of commercial regulatory records between executive branch agencies.[7] On the contrary, there is more than considerable doubt that Congress

---

[6] Section 6(j) of the Shipping Act provides in relevant part,

Except for an agreement filed under section 1704 of this Appendix, information and documentary material filed with the Commission under section 1704 of this Appendix or this section is exempt from disclosure under section 552 of title 5 [United States Code the Freedom of Information Act] *and may not be made public except as may be relevant to an administrative or judicial action or proceeding* This section does not prevent disclosure to either body of Congress or to a duly authorized committee or subcommittee of Congress.

46 U.S C app. 1705(j) (emphasis added)

[7] Earlier opinions of the Attorney General are also consistent with the conclusion we reach here In an opinion concluding that a predecessor trade secrets nondisclosure statute similar to the TSA (section 708 of the Act of

Continued

intended the TSA to criminalize such intra-governmental exchanges, which do not involve the kind of misuse or misappropriation of proprietary information which the TSA was intended to forestall. *See Emerson Electric*, 609 F.2d at 906.

Although the foregoing judicial and administrative precedents support the view that the proposed disclosure of proprietary information to other agencies is not the kind of disclosure that the TSA was intended to prohibit, we need not decide here whether the TSA is wholly inapplicable to authorized inter-agency disclosures. Taking into account the background of these precedents, we believe that the provisions of the Federal Housing Enterprises Act (together with OFHEO regulations recently promulgated thereunder, *see* Part II.D, *infra*) provide adequate authorization for such disclosures to fall within the "authorized by law" exception to the TSA's prohibitions.

## B.

Before turning to the FHE Act, we first consider the availability of the Paperwork Reduction Act as a source of authority for the particular category of disclosures contemplated here. That statute warrants consideration because the above-quoted opinions of this Office emphasized that the inter-agency exchanges of information which they approved had been affirmatively authorized by the PRA and were therefore "authorized by law" within the meaning of the TSA. *See* 1994 Opinion at 3 n.4; 5 Op. O.L.C. at 261 n.3. Similarly, the court in *Emerson Electric* bolstered its conclusion that the TSA applies "only to public disclosures" by stressing that the Federal Reports Act (predecessor statute to the PRA) "controls exchanges between agencies." 609 F.2d at 907.

The PRA provides in relevant part:

> (a) The Director [of the Office of Management and Budget] may direct an agency to make available to another agency, *or an agency may make available to another agency, information obtained by a*

---

Sept 8, 1916, 39 Stat. 756, 798) did not prohibit the U S. Tariff Commission from providing the War Trade Board certain trade secrets obtained by the Commission in performing its regulatory duties, the Attorney General stated:

> It will be noted that the inhibition in the foregoing section is directed against the disclosure of trade secrets "to any person " It is a well-recognized rule of law that *the sovereign power is not included by the general terms of a statute.*     .

> These considerations, it seems to me, are persuasive of an interpretation of section 708, which, in pursuance of the cooperation authorized by section 707, *would not preclude the availability of all the information gathered by the Tariff Commission for any appropriate use by any Department or independent branch of the Government*, including the War Trade Board

*Tariff Commission—Disclosure of Trade Secrets*, 31 Op. Att'y Gen 541, 542–43 (1919) (emphasis added). *See also Authority of Federal Communications Commission to Disclose Confidential Information to Senate Committee on Interstate and Foreign Commerce*, 41 Op. Att'y Gen. 221 (1955). There, in concluding that the Federal Communications Commission's disclosure of certain proprietary information to a Senate committee was "authorized by law" within the meaning of the TSA, the Attorney General opined that the statutory or other authorization for such intra-governmental disclosure of such material may be "reasonably implied rather than express." *Id* at 228

> *collection of information* if the disclosure is not inconsistent with applicable law.

44 U.S.C. § 3510(a) (emphasis added).

It does not appear, however, that the particular category of information referenced in your opinion request is the kind of information covered by the PRA — that is, information obtained by a "collection of information," *see* 44 U.S.C. § 3502(3) (Supp. I 1995). In this regard, your letter refers to "reports on [the] financial condition and operations" of the Enterprises required by OFHEO; other special reports submitted by the Enterprises that, in the judgment of the Director, are necessary to carry out the purposes of the 1992 Act; and other "sensitive, proprietary data" received from the Enterprises by OFHEO "[i]n carrying out its oversight authorities." OFHEO Letter at 2.

Under the PRA, the term "collection of information" is defined as

> the obtaining, causing to be obtained, soliciting, or requiring the disclosure to third parties or the public, of facts or opinions by or for an agency, regardless of form or format, calling for either—
>
> (i) answers to identical questions posed to, or identical reporting or recordkeeping requirements imposed on, *ten or more persons, other than agencies, instrumentalities, or employees of the United States*; or
>
> (ii) answers to questions posed to *agencies, instrumentalities, or employees of the United States which are to be used for general statistical purposes*; . . . .

44 U.S.C. § 3502(3)(A) (emphasis added).

The information obtained by OFHEO from the Enterprises does not appear to have been obtained by a "collection of information" that conforms to the definition under either subparagraph (i) or (ii). Subparagraph (i) appears inapplicable because OFHEO's collection efforts are not imposed on "ten or more persons." Rather, it appears that they are imposed only on the two Enterprises. Subparagraph (ii) likewise appears inapplicable based upon both of its criteria. The Enterprises are both private entities, rather than agencies or instrumentalities of the United States. *See* 12 U.S.C. § 1716b (1994) (Fannie Mae re-established as "a Government-sponsored private corporation"); *American Bankers Mortgage Corp. v. Federal Home Loan Mortgage Corp.*, 75 F.3d 1401, 1408 (9th Cir.) (Freddie Mac is not a government entity), *cert. denied*, 519 U.S. 812 (1996); *Patriot, Inc. v. HUD*, 963 F. Supp. 1, 7 (D.D.C. 1997) ("Fannie Mae is a 'private corporation,' 12 U.S.C. § 1716b, owned by its private shareholders, and as a private entity, it does not issue regulations."); *Liberty Mortgage Banking, Ltd. v. Federal Home*

*Loan Mortgage Corp.*, 822 F. Supp. 956, 958–60 (E.D.N.Y. 1993) (Freddie Mac is a private corporation rather than a government agency). Moreover, it does not readily appear that the information in question here is to be used for general statistical purposes. Rather, it is to be used for specific regulatory and oversight purposes bearing upon the Enterprises.

Because the information at issue does not appear to have been obtained through a ''collection of information'' within the meaning of the PRA, we do not believe that the PRA's authorization for inter-agency disclosures, *see* 44 U.S.C. § 3510(a), may be relied upon as affirmative authority for the disclosures proposed here. That raises the question whether the proposed inter-agency disclosure is otherwise ''authorized in a general way by law,'' *Liquidation of Reconstruction Finance Corporation — Disclosure of Information*, 41 Op. Att'y Gen. 166, 169 (1953). We believe that it is.

## C.

This Office has previously considered whether certain information or records not covered by the express authorizations of the PRA (and also exempt from disclosure to the public under the FOIA, as in the case of trade secrets) may nonetheless be disclosed or provided by one federal agency to another for official agency purposes. See 5 Op. O.L.C. 255 (1981). As we framed the issue in that opinion:

> The existence of an affirmative authorization in the Paperwork Reduction Act for certain information arguably implies that some authorization is required, whether by statute, either expressly or by necessary implication, or by substantive regulation. Moreover, it may be necessary to determine whether there is an authorization for disclosure to federal law enforcement and intelligence agencies to avoid the strictures of 18 U.S.C. § 1905.

*Id.* at 262. We then described the kind of authorization ''by law'' that would satisfy this concern when the PRA is not apparently applicable:

> The phrase ''authorized by law'' does not mean that the authorization must be ''specifically authorized by law''; it is sufficient that the disclosure is ''authorized in a general way by law.'' 41 Op. Att'y Gen. 166, 169 (1953).

*Id.* We then listed some examples of the kinds of authorizations that satisfy the foregoing standard, ranging from subpoenas and requests from congressional committees, to substantive agency regulations that expressly or implicitly authorize

the waiver of confidentiality, to authorizations that are based upon "necessary statutory implication." *Id.* at 263.[8]

Applying these standards to the matter presented here, we believe the legislation establishing the OFHEO and its powers and responsibilities (i.e., the FHE Act) contemplates a degree of inter-agency cooperation and interaction that reasonably implies authorization to exchange regulatory information obtained by OFHEO with cooperating federal agencies in furtherance of OFHEO's statutory purposes. *Cf. Interco*, 490 F. Supp. at 44, 46 (construing section 6(f) of FTC Act to authorize "non-public release" of trade secret material to State Attorneys General for law enforcement purposes, even while acknowledging that the "statute does not on its face authorize [such] release"); *Shell Oil Co. v. DOE*, 477 F. Supp. at 433.[9]

Initially, we note that the Director of OFHEO is broadly authorized to "take such actions . . . as the Director determines necessary" regarding a broad range of matters, including "examinations of the enterprises," "other matters relating to safety and soundness [of the enterprises]," and "conducting research and financial analysis." 12 U.S.C. § 4513(b)(2), (5), and (10). In exercising this broad authority, the Director could reasonably conclude that appropriately controlled regulatory information exchanges with other federal financial regulators are needed to maintain the level of knowledge and understanding demanded in the highly complex and technical field of federal financial regulation. In this regard, we note that OFHEO's letter to this Office asserts that the proposed exchanges of supervisory information would "enable[ ] Federal agencies to proactively address regulatory compliance more effectively and efficiently." OFHEO Letter at 3. OFHEO further states that it seeks to exchange the information in question "[i]n fulfilling its safety and soundness mission." *Id.* at 2. In view of such representations, the proposed reciprocal inter-agency exchanges would appear to fall within the broad discretionary authority granted the Director under 12 U.S.C. § 4513(b).

Additional, and more specific, grants of authority to the OFHEO Director under the FHE Act reinforce our conclusion that the statute taken as a whole provides adequate, albeit implicit, authorization for the proposed inter-agency disclosures.

---

[8] In this regard, we believe that an application of the Paperwork Reduction Act that would effectively bar official purpose inter-agency disclosures by negative implication would be plainly inconsistent with that legislation's stated objective "to maximize the utility of information created, collected, maintained, used, shared and disseminated by or for the Federal Government " 44 U S.C § 3501(2) (Supp. I 1995).

[9] In holding that the Federal Energy Administration Act provided adequate authority for inter-agency disclosure of energy company financial and operational information that would otherwise be barred by the TSA, the court in the *Shell Oil* case stated.

> Given the purpose of the National Energy Information System and the express declaration of a policy favoring agency cooperation with respect to energy data, it is difficult to argue that Congress did not contemplate disclosure of energy information by the Administrator at least to those other federal agencies who are vested with policy making responsibility in the energy area

477 F Supp at 433 The court went on to hold that the information could be disclosed to any other federal agency which had a legitimate need for that information. *Id.* at 433–35. *See also Emerson Electric*, 609 F.2d at 906, where the court, in referring to the provisions of the Federal Reports Act (the predecessor version of the PRA), stated "the provisions of the Act are to be read with an eye toward encouraging interagency cooperation . . ."

For example, the Act provides: "In carrying out the duties of the Office, the Director may use information, services, staff, and facilities of any executive agency, independent agency, or department on a reimbursable basis, with the consent of such agency or department." 12 U.S.C. § 4515(c). Additionally, 12 U.S.C. § 4517(c) authorizes OFHEO, through the Director, to contract with other federal banking agencies (such as the Comptroller of the Currency, the FDIC, and the Office of Thrift Supervision) for the services of examiners to assist OFHEO in conducting examinations of the Enterprises required by the Act. The examiners appointed from other agencies "shall have the same authority and . . . shall be subject to the same disclosures, prohibitions, obligations, and penalties as are applicable to examiners employed by the Federal Reserve banks." *Id.* § 4517(d). In authorizing OFHEO to use the information, personnel, and services of other agencies in carrying out its statutory responsibilities, it is reasonable to assume that these provisions contemplate that OFHEO could disclose its regulatory information to those agencies insofar as necessary to obtain the authorized assistance or support.

In sum, we conclude that these and other provisions of the OFHEO legislation provide adequate "general" authorization for OFHEO to disclose proprietary regulatory information to other federal agencies for the official purposes stated, and subject to appropriate controls to maintain confidentiality, without violating the TSA.[10]

## D.

We note finally that, subsequent to the submission of the request for this opinion, OFHEO promulgated new regulations governing the release of its documents and information. *See* Releasing Information, 63 Fed. Reg. 70,998 (1998) (to be codified at 12 C.F.R. pt. 1710). Two of the new provisions appear pertinent to the issue of inter-agency disclosure presented here. The new "General rule" in § 1710.6 provides:

> Except as authorized by this part or as otherwise necessary in performing official duties, no employee shall in any manner disclose or permit disclosure of any document or information in the

---

[10] As indicated in our Shipping Act Opinion (discussed *infra* pp 78–80), only a clear and specific legislative prohibition is sufficient to overcome "the general presumption that information obtained by one federal government agency is to be freely shared among federal government agencies" when such information "relates to the [official] performance of the official duties of these agencies " 9 Op O L C at 52–53 That position could be said to rest on the more fundamental proposition that executive agencies have *inherent* authority to exchange such information for valid official purposes in the absence of specific legislation, or constitutional provision, prohibiting such exchange. Because we conclude that the provisions of the legislation establishing OFHEO adequately authorize the disclosures in question by statutory implication, and because the information at issue here is proprietary in nature and thus raises special considerations, we need not base our conclusion on an assertion of such inherent authority.

possession of OFHEO that is confidential or otherwise of a non-public nature, including that regarding OFHEO or [the Enterprises].

12 C.F.R. § 1710.6. Further, with respect to OFHEO's reports of examinations of the Enterprises, which may include confidential financial information of the type otherwise covered by the TSA, the new regulations provide: "The Director may make available reports of examination for the confidential use of Federal agencies responsible for investigating or enforcing applicable Federal laws." *Id.* § 1710.8(c).

These new regulations provide further support for our conclusion. As recognized in our 1981 opinion, duly promulgated agency regulations based on valid statutory authority provide a lawful source of disclosure authority for purposes of the TSA's "authorized by law" exception. *See* 5 Op. O.L.C. at 262 (stating that agency regulations may provide the requisite authorization by law, "provided that the authority on which the regulation is based includes, either expressly or by necessary implication, the power to waive the confidentiality of the information"). Courts have held to the same effect. *See, e.g., CNA Fin. Corp. v. Donovan*, 830 F.2d 1132, 1138 (D.C. Cir. 1987), *cert. denied*, 485 U.S. 977 (1988); *Doctors Hosp. of Sarasota, Inc. v. Califano*, 455 F. Supp. 476, 481 (M.D. Fla. 1978) ("information disclosure pursuant to a validly enacted agency regulation is authorized by law for purposes of 18 U.S.C. § 1905"). Here, OFHEO expressly invoked the provisions of 12 U.S.C. § 4513 (discussed above) as well as other provisions of the FHE Act as providing authority for the regulations in question. Thus, these regulations fortify our conclusion that disclosures of confidential information made pursuant to them would be "authorized by law" and thus outside the prohibitions of the TSA. For example, 12 C.F.R. § 1710.8(c) authorizes the Director to make available reports of examinations of the Enterprises "for the confidential use of Federal agencies responsible for investigating or enforcing applicable Federal laws." We understand that these reports may include the kind of confidential or proprietary business information otherwise covered by the TSA. This regulation would authorize disclosures of such information to other financial regulatory agencies, provided that the agencies in question have some federal investigatory or enforcement authority.[11]

---

[11] It should be recognized that OFHEO's disclosures of confidential or proprietary information must comply with its own regulations even if such disclosures are not prohibited by the TSA. Thus, new § 1710 6 of the regulations specifically provides that OFHEO employees may disclose confidential information in possession of OFHEO only if the disclosure is authorized by part 1710 or is otherwise "necessary in performing official duties " Apart from § 1710.6 itself and § 1710 8 (governing inter-agency disclosure of reports of examinations of the Enterprises), we have not identified any other provision of part 1710 that authorizes disclosure of confidential or proprietary information to other federal agencies. Consequently, § 1710 6 appears to limit OFHEO's disclosures of confidential information to other agencies (other than that covered by § 1710 8) to situations where the disclosure is considered "necessary in performing official duties " We believe that the Director would have considerable discretion, however, in determining whether particular disclosures are "necessary" within the meaning of the regulation

## Conclusion

For all the foregoing reasons, we conclude that the type of inter-agency, official purpose disclosures set forth in your letter would be "authorized by law" within the meaning of the Trade Secrets Act and therefore would not violate that act.

WILLIAM MICHAEL TREANOR
*Deputy Assistant Attorney General*
*Office of Legal Counsel*