**UNITED STATES of America,
Plaintiff–Appellee,**

**v.**

**Wallace G. WALLINGTON,
Defendant–Appellant.**

**No. 88–6033.**

United States Court of Appeals,
Fifth Circuit.

Nov. 21, 1989.

Don Lambright, Houston, Tex., for defendant-appellant.

Geoffrey R. Brigham, Dept. of Justice, Criminal Appellate, Washington, D.C., Paula C. Offenhauser, Kathlyn Giannaula, Asst. U.S. Attys., and Henry K. Oncken, U.S. Atty., Houston, Tex., for plaintiff-appellee.

Before THORNBERRY, GARWOOD and DUHÉ, Circuit Judges.

GARWOOD, Circuit Judge:

Defendant-appellant Wallace G. Wallington (Wallington) appeals his conviction for divulging information obtained within the scope of his official duties as an employee with the United States Customs Service (Customs Service) in violation of 18 U.S.C. § 1905. As the sole basis of his appeal, Wallington challenges the facial constitutionality of that statute.[1] We determine that the statute is constitutional, and accordingly affirm.

### Facts and Proceedings Below

Wallington became an employee of the Customs Service in 1974. In 1986, he was assigned to the Regional Intelligence Branch (RIB), which collects information for use by other Customs Service offices in their official functions. In particular, RIB maintains a sophisticated computer data base of confidential law enforcement files known as the Treasury Enforcement Communications Systems (TECS). By conducting computerized searches in the TECS data base, customs investigators can obtain a variety of federal and state law enforcement records. As a matter of Customs Service policy, information retrieved from the data base is available for official use

---

1. Wallington's appellant's brief (his only brief in this Court)—by its "second point of error"—also challenged the admission of a written pretrial statement made by him; however, by subsequent letter to this Court (with supporting letter from Wallington personally) his counsel advised that "appellant waives the second point of error raised in this cause."

only, and the necessity of security is stressed to all employees.

Sometime in July 1986, an old friend of Wallington's named Debra Sue Epps (Epps) asked him to run a check on several people she suspected of drug dealing. Epps—who was not an employee of (or in any other way affiliated with) any governmental or official body—believed that she was under investigation in connection with the murder of her husband, and she apparently wanted the information to assist in investigations she was making in her defense. On July 14, 1986, Wallington caused a check to be run in the TECS computer on the names and other identifying data Epps had provided. The record is equivocal as to exactly what information this search retrieved, but it at least yielded the arrest and conviction records of one or more of the persons thus checked as well as general information regarding the year, make, and ownership of the automobile registered to a license number that Epps had supplied. The government's evidence, including two pretrial statements by Wallington himself, indicates that Wallington then communicated this information to Epps.

On account of Wallington's furnishing this information to Epps, the United States Attorney issued an information charging Wallington with disclosing information in violation of 18 U.S.C. § 1905 (Count I) and with embezzlement in violation of 18 U.S.C. § 642 (Count II). Wallington was tried before a jury in the United States District Court for the Southern District of Texas. The jury acquitted Wallington on the second count, but convicted him on the first, and the court sentenced him to pay a $250 fine and serve two years of supervised probation. Wallington now appeals, claiming that 18 U.S.C. § 1905 is facially invalid as contrary to the First and Fifth Amendments of the United States Constitution.

**Discussion**

The statute in question provides:

"§ 1905. Disclosure of Confidential Information Generally

"Whoever, being an officer or employee of the United States or of any department or agency thereof, or agent of the Department of Justice as defined in the Antitrust Civil Process Act (15 U.S.C. 1311–1314), publishes, divulges, discloses, or makes known in any manner or to any extent not authorized by law any information coming to him in the course of his employment or official duties or by reason of any examination or investigation made by, or return, report or record made to or filed with, such department or agency or officer or employee thereof, which information concerns or relates to the trade secrets, processes, operations, style of work, or apparatus, or to the identity, confidential statistical data, amount or source of any income, profits, losses, or expenditures of any person, firm, partnership, corporation, or association; or permits any income return or copy thereof or any book containing any abstract or particulars thereof to be seen or examined by any person except as provided by law; shall be fined not more than $1,000, or imprisoned not more than one year, or both; and shall be removed from office or employment."

As noted, Wallington's sole challenge on appeal is to the constitutionality of section 1905 on its face. He contends, first, that the statute is an overbroad restriction of free expression protected by the First Amendment and, second, that the statute is impermissibly vague in violation of the due process clause of the Fifth Amendment.[2] Each of these arguments is grounded in an extremely broad construction of the statute's scope.

Wallington in essence contends that section 1905 prohibits any communication by federal employees about their occupation that could be construed to concern or relate to the identity of any person (or any of the other categories of protected information enumerated in the statute) regardless of

---

2. These issues are novel, in part because convictions for violations of 18 U.S.C. § 1905 are very rare. We know of only one reported opinion involving such a conviction. *See United States* *v. Stern*, 418 F.2d 198 (2d Cir.1969). The constitutionality of the statute was not challenged in that case.

the government's interest in protecting the confidentiality of the information, unless Congress specifically authorizes the disclosure. This, he argues, is an unconstitutionally overbroad and impermissibly vague restraint on expression. We conclude that a more natural construction of the statute obviates these objections.

### I. *Overbreadth*

■ The constitutional defect of an overbroad restraint on speech lies in the risk that the wide sweep of the restraint may chill protected expression. *E.g., CISPES (Committee in Solidarity with the People of El Salvador) v. F.B.I.*, 770 F.2d 468, 472 (5th Cir.1985). Conversely, invalidation of a statute on overbreadth grounds brings about total judicial abrogation of even the legitimate regulation at the core of the overbroad statute. *Id.* To avoid this result, where there are a substantial number of situations to which a statute may validly be applied, we eschew reliance on the overbreadth doctrine. *E.g., Howell v. State Bar of Texas*, 843 F.2d 205, 208 (5th Cir.), *cert. denied,* —— U.S. ——, 109 S.Ct. 531, 102 L.Ed.2d 563 (1988); *see also Broadrick v. Oklahoma*, 413 U.S. 601, 93 S.Ct. 2908, 2918, 37 L.Ed.2d 830 (1973). As an important corollary to this principle, a federal statute should be construed narrowly to avoid overbreadth, if the statute is fairly subject to such a limiting construction. *E.g., Boos v. Barry*, 485 U.S. 312, 108 S.Ct. 1157, 1169, 99 L.Ed.2d 333 (1988); *CISPES*, 770 F.2d at 473; *United States v. Reeves*, 752 F.2d 995, 1001 (5th Cir.), *cert. denied,* 474 U.S. 834, 106 S.Ct. 107, 88 L.Ed.2d 87 (1985).

Wallington raises two major objections to section 1905. He complains first that it prohibits disclosure of almost any employment-related information, regardless of the government's interest in preventing its disclosure, and second that the statute prohibits even innocent disclosures. We are not convinced, however, that Congress intended this statute to apply to such harmless or innocent expression.

### A. *Does the statute prohibit disclosure of nonconfidential information?*

■ Wallington contends that section 1905 prohibits disclosure of almost *any* employment-related information, regardless of the government's interest in secrecy. This argument is based on the omission of any express language in the text of the statute itself requiring that the information disclosed be "confidential." Wallington urges us to conclude that Congress intended to impose prison terms of up to one year upon federal employees who make even harmless statements regarding facts that are obviously not confidential, simply because the employee obtained the information in the course of his employment.

Admittedly, a literal reading of the text of section 1905 could support such a seemingly absurd construction. Taken out of context, the statutory language does purport to forbid all federal government employees from making known in any manner any information coming to them in the course of their employment, the only explicit qualification being that the information must concern or relate to one of the several categories listed in the statute. Even that is hardly a limitation, however, because the categories include such general terms as the "apparatus" or "processes" or even the "identity" of any person. Wallington urges us to embrace this superficial reading and conclude that section 1905 has the bizarre effect of criminalizing and imposing prison terms for almost every communication by government employees of information they obtain in the scope of their employment.

But "[w]here the literal reading of a [statute] would 'compel an odd result,' we must search for other evidence of congressional intent to lend the [statute] its proper scope." *Public Citizen v. United States Dep't of Justice*, —— U.S. ——, 109 S.Ct. 2558, 2566, 105 L.Ed.2d 377 (1989) (quoting *Green v. Bock Laundry Mach. Co.,* —— U.S. ——, 109 S.Ct. 1981, 1984, 104 L.Ed.2d 557 (1989)). The Supreme Court instructs that

"[l]ooking beyond the naked text for guidance is perfectly proper when the

result it apparently decrees is difficult to fathom or where it seems inconsistent with Congress' intention, since the plain-meaning rule is 'rather an axiom of experience than a rule of law, and does not preclude consideration of persuasive evidence if it exists.'" *Id.* (quoting *Boston Sand & Gravel Co. v. United States,* 278 U.S. 41, 49 S.Ct. 52, 53, 73 L.Ed. 170 (1928) (Holmes, J.)).

*See also United States v. American Trucking Ass'ns.,* 310 U.S. 534, 60 S.Ct. 1059, 1063–64, 84 L.Ed. 1345 (1940) ("When aid to construction of the meaning of words, as used in the statute, is available, there certainly can be no 'rule of law' which forbids its use, however clear the words may appear on 'superficial examination.'") (footnotes omitted). In the present case, there is substantial evidence indicating that Congress intended a much narrower statute than Wallington contends.

■ This evidence suggests that Congress intended to prohibit disclosures only of *confidential* information.[3] In the first place, the section is captioned "Disclosure of Confidential Information Generally." This heading was included in the statute as it was considered and enacted by Congress. *See* Act of June 25, 1948, ch. 645, 62 Stat. 683, 791. In the face of ambiguity, we will consider a section heading enacted by Congress in conjunction with the statutory text to "come up with the statute's clear and total meaning." *United States v. Holmes,* 822 F.2d 481, 494 n. 22 (5th Cir.1987) (quoting *House v. C.I.R.,* 453 F.2d 982, 987 (5th Cir.1972)). Here, the heading is particularly persuasive evidence of congressional intent, because several of the specifically itemized categories of protected information are clearly confidential in nature: for example, "trade secrets" and "confidential

statistical data." Thus, it is natural to infer that the references to more general categories of information included in the same list (such as information related to "processes," "apparatus," or to the "identity ... of any person") are also to be understood in this limited sense.[4] This construction is also in keeping with the well-settled principle that "ambiguity concerning the ambit of criminal statutes should be resolved in favor of lenity." *See Liparota v. United States,* 471 U.S. 419, 105 S.Ct. 2084, 2089, 85 L.Ed.2d 434 (1985).

■ For these reasons, we hold that section 1905 prohibits the disclosure of information by a federal employee only if the information is confidential, *at least* in the sense that it is the official policy of the agency in question (or is otherwise required by statute or regulation) that the information *not* be released.[5] We believe this reading of the statute is a much more accurate approximation of the effect envisioned by Congress than is the expansive and peculiar construction that Wallington proposes.

B.   *Does the statute include a* mens rea *requirement?*

■ Wallington also observes that section 1905 contains no express language imposing a *mens rea* requirement. He concludes from this omission that the statute creates strict criminal liability even for innocent disclosures of information. But quite to the contrary, "it is well settled that 'far more than the simple omission of the appropriate phrase from the statutory definition [of the offense] is necessary to justify dispensing with' a *mens rea* requirement." *United States v. Anderson,* 885 F.2d 1248, 1253 (5th Cir.1989) (en banc)

---

**3.** In at least one other decision, we have assumed that the section 1905 penalties applied only to "unauthorized disclosure of *confidential* governmental information." *United States v. Jeffers,* 621 F.2d 221, 226 (5th Cir.1980) (emphasis added).

**4.** This inference is in accordance with the general principle of *noscitur a sociis,* a canon of interpretation which instructs that "[t]he meaning of a word may be ascertained by reference to those associated with it." *Simmons v. United*

*States,* 308 F.2d 938, 943 (5th Cir.1962); *see also Martin v. Commercial Secs. Co.,* 539 F.2d 521, 527 & n. 21 (5th Cir.1976).

**5.** Because the statute expressly limits its application to disclosures "in any manner or to any extent not authorized by law," we observe that the nondisclosure mandated by agency policy must be lawful—that is, it must not be contrary to, *inter alia,* the First Amendment or applicable federal statutes (or regulations having superior legal authority to the policy in question).

(quoting *Liparota,* 105 S.Ct. at 2088). The requirement of *mens rea* for criminal liability is a fundamental principle of Anglo–American common law. Congress is generally presumed to enact federal penal statutes "against the background of our traditional legal concepts which render intent a critical factor, and 'absence of contrary direction [will] be taken as satisfaction with widely accepted definitions, not as a departure from them." *United States v. United States Gypsum Co.,* 438 U.S. 422, 98 S.Ct. 2864, 2873, 57 L.Ed.2d 854 (1978) (quoting *Morissette v. United States,* 342 U.S. 246, 72 S.Ct. 240, 250, 96 L.Ed. 288 (1952)); *see also Anderson,* 885 F.2d at 1254–55. Thus, we have read an implicit *mens rea* requirement into a number of criminal statutes that are silent on that element. *See, e.g., Anderson,* 885 F.2d at 1254–55; *United States v. Delahoussaye,* 573 F.2d 910, 912–13 (5th Cir.1978); *United States v. Boerner,* 508 F.2d 1064, 1067–68 (5th Cir.), *cert. denied,* 421 U.S. 1013, 95 S.Ct. 2418, 44 L.Ed.2d 681 (1975); *cf. United States v. Panter,* 688 F.2d 268, 271 (5th Cir.1982) (reading a self-defense exception into statute prohibiting felons from possessing firearms). In doing so, we have followed the lead of the Supreme Court. *See, e.g., Liparota,* 105 S.Ct. at 2088; *United States v. Bailey,* 444 U.S. 394, 100 S.Ct. 624, 633, 62 L.Ed.2d 575 (1980); *United States Gypsum Co.,* 98 S.Ct. at 2876.

We do not believe that Congress intended to create strict criminal liability and impose prison sentences of up to one year for innocent disclosures of information. Nothing in the scant legislative history of section 1905 gives any hint that such a harsh result was intended.[6] In the absence of strong indicia to that effect, we are unable to conclude that Congress meant to depart from the implicit background assumption that *mens rea* is required to commit a crime. Such a conclusion would run

counter to our obligation to construe criminal statutes in favor of lenity. *See Liparota,* 105 S.Ct. at 2089. Because section 1905 is directed at unauthorized disclosures of confidential information, the appropriate culpability must *at least* include knowledge that the information is confidential in the sense that its disclosure is forbidden by agency official policy (or by regulation or law).

### C. *Is the statute an overbroad regulation of expression?*

■ Having construed the statute to prohibit only knowing disclosures by federal employees of confidential information that comes to them within the course of their employment, we now must decide whether this prohibition constitutes a constitutionally overbroad regulation of expression. We conclude that it does not.

The government as an employer "may not require an employee 'to surrender First Amendment rights as a condition of employment'; however, an employee is not always free to speak as a private citizen." *Matherne v. Wilson,* 851 F.2d 752, 759–60 (5th Cir.1988) (quoting *Gonzalez v. Benavides,* 774 F.2d 1295, 1299 (5th Cir.1985), *cert. denied,* 475 U.S. 1140, 106 S.Ct. 1789, 90 L.Ed.2d 335 (1986)); *see also Broadrick v. Oklahoma,* 93 S.Ct. 2908, 2918 (1973). To assess the validity of a public employer's restraint on the free expression of its employees, courts must balance "the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the [government], as an employer, in promoting the efficiency of the public services it performs through its employees." *Matherne,* 851 F.2d at 760 (quoting *Pickering v. Board of Education,* 391 U.S. 563, 88 S.Ct. 1731, 1734–35, 20 L.Ed.2d 811 (1968)); *see also Connick v. Myers,* 461 U.S. 138, 103 S.Ct. 1684, 1689–91, 75 L.Ed.2d 708 (1983). Preserving the

---

6. Section 1905, also known as the "Trade Secrets Act," is a product of the 1948 codification and revision of the Federal Criminal Code brought about by the Act of June 25, 1948, ch. 645, 62 Stat. 683, 791. What little legislative history there is indicates only that the revised section 1905 was based on three preexisting provisions prohibiting disclosures of certain

types of confidential information by government employees. Otherwise, the sparse history is virtually silent, making a few purely editorial comments and noting that the revisions effected "[m]inor changes in translations and phraseology." *See* H.R.Rep. No. 304, 80th Cong., 1st Sess., app., at A127–28 (1947).

confidentiality of government records and reports is essential to the efficient collection of information for use in the conduct of public affairs. If citizens fear uncontrolled disclosure of the trade secrets, tips, and other confidential data the government asks them to provide, they will be less willing to cooperate in the government's efforts to collect the data. Disclosure of confidential law enforcement information not only thwarts enforcement efforts but may endanger the safety of officials charged with enforcing the law. The Supreme Court recently suggested that the government has particularly extensive power to control the disclosure of sensitive information within its custody, and that the government may sanction its employees where "the mishandling of sensitive information leads to its dissemination." *The Florida Star v. B.J.F.*, —— U.S. ——, 109 S.Ct. 2603, 2609, 105 L.Ed.2d 443 (1989); *see also Snepp v. United States*, 444 U.S. 507, 100 S.Ct. 763, 765 n. 3, 62 L.Ed.2d 704 (1980) (recognizing government's compelling interest in preserving secrecy of information important to national security).

At least in a substantial number of cases, the requirement that government employees refrain from knowingly disclosing confidential information contained in government files or collected in the scope of their official duties will strike a permissible balance between the First Amendment and the practical necessities of public service. Admittedly, in an extraordinary case, an employee's interest in expression on a matter of vital public concern might well outweigh the government's interest in confidentiality.[7] But "we need not refute any and every theoretical case which might constitute an impermissible application of the statute" in this facial challenge. *CISPES*, 770 F.2d at 475. We are confident that our construction will eliminate any impermissibly general chilling effect that section 1905 may otherwise have had. Thus, section 1905 is not an overbroad restriction on the right of government employees to speak.

## II. *Vagueness*

■ We next consider Wallington's vagueness challenge. Relying upon his expansive construction of section 1905, he argues that the statute gives no guideline for determining what disclosures will violate the law. This, he contends, gives police and prosecutors a tool for arbitrarily harassing government employees. In light of our construction of the statute, however, we conclude that section 1905 is not impermissibly vague.

Admittedly, criminal offenses must be defined with sufficient precision that ordinary people can understand what conduct is prohibited. Perhaps more importantly, precision is required to avoid giving policemen, prosecutors, and juries the power of arbitrary enforcement. *Kolender v. Lawson*, 461 U.S. 352, 103 S.Ct. 1855, 1858, 75 L.Ed.2d 903 (1983); *CISPES*, 770 F.2d at 475. This precision is particularly important when the statute regulates activity protected by the First Amendment. *Smith v. Goguen*, 415 U.S. 566, 94 S.Ct. 1242, 1247, 39 L.Ed.2d 605 (1974); *CISPES*, 770 F.2d at 475. Our construction of section 1905, however, substantially reduces the notice problems and the likelihood of the type of arbitrary and discriminatory enforcement that Wallington predicts.

First, we have construed the statute to restrict only the disclosure of confidential information, and we have further defined "confidential" to require *at least* that the government agency in question have an official policy that the information *not* be disclosed (or that nondisclosure be mandated by statute or regulation).[8] This construction gives specific notice as to the type of conduct prohibited, and therefore substantially reduces the risk of arbitrary enforcement. Second, we have construed the statute to penalize only knowing violations. Only government employees who divulge information with knowledge that its disclosure is forbidden by official agen-

---

**7.** The evidence indicates that nothing remotely of that kind is involved here; nor is there any claim to the contrary. As noted, the challenge to section 1905 is a facial, not an "as applied," challenge.

**8.** Moreover, if disclosure is authorized by law, there is no violation. *See* note 5, *supra*.

cy policy (or by law or regulation) are subject to the penalties of section 1905. Such an employee who acts in knowing contravention of a confidentiality policy "is under no necessity of guessing whether the statute applies to him." *Screws v. United States*, 325 U.S. 91, 65 S.Ct. 1031, 1036, 89 L.Ed. 1495 (1945). *See also United States v. Guest*, 383 U.S. 745, 86 S.Ct. 1170, 1175, 16 L.Ed.2d 239 (1966). Further, by increasing the burden upon prosecutors who seek to enforce the statute, a knowledge requirement "serves both to further restrict any arbitrary enforcement of the statute, and to reduce the likelihood of conviction for a good faith exercise of expressive rights." *CISPES*, 770 F.2d at 476. For these reasons, we conclude that section 1905 as construed is not fatally vague on its face.

### Conclusion

Because our construction of section 1905 eliminates its asserted facial constitutional defects alleged by Wallington, and because he raises no other claim of error on this appeal,[9] we affirm his conviction.

AFFIRMED.

**9.** In this connection, we apply the rule that: "We do not search the record for unassigned error, and contentions not raised on appeal are deemed waived." *United States v. Fagan*, 821 F.2d 1002, 1015 (5th Cir.1987), *cert. denied*, 484 U.S. 1005, 108 S.Ct. 697, 98 L.Ed.2d 649 (1988); *see also United States v. Johnson*, 718 F.2d 1317, 1325 n. 23 (5th Cir.1983) (en banc). We observe that Wallington has been represented by capable counsel throughout.