United States Court of Appeals
Fifth Circuit

**F I L E D**

**December 17, 2004**

Charles R. Fulbruge III
Clerk

**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

No. 03-21217

UNITED STATES OF AMERICA,

Plaintiff-Appellant,

VERSUS

MICHELLE M. VALENCIA,

Defendant-Appellee.

Appeal from the United States District Court
For the Southern District of Texas

Before DeMOSS, DENNIS, and CLEMENT, Circuit Judges.

DeMOSS, Circuit Judge:

Plaintiff-Appellant United States of America (the "Government") appeals the district court's dismissal of a portion of three counts of a seven-count indictment against Defendant-Appellee Michelle Valencia. The district court held a portion of § 13(a)(2) of the Commodity Exchange Act ("CEA"), 7 U.S.C. § 13(a)(2), unconstitutional as overbroad and severed the offending portion of the statute, permitting the constitutional portions as well as other counts of the indictment to survive Valencia's motion to dismiss. For the following reasons, we determine that § 13(a)(2) is not unconstitutionally overbroad and therefore REVERSE.

**BACKGROUND**

Valencia was indicted on January 22, 2003, and is charged in relevant part with the knowing delivery on three occasions of "false and misleading and knowingly inaccurate reports" concerning market information that affected and tended to affect the price of natural gas, a commodity in interstate commerce, in violation of 7 U.S.C. § 13(a)(2). The indictment alleges Valencia was employed by Dynegy Marketing and Trade as a natural gas trader, thereby capable of entering transactions that call for the physical delivery of natural gas at fixed or "index" prices.

According to the indictment, *Inside FERC Gas Market Report* ("*Inside FERC*") is an industry newsletter published on the first day of each month that reports certain index prices. *Inside FERC* calculates its reported index prices using information received from traders during monthly surveys, including the price and volume of fixed price, natural gas trades during a period of time. Electric utilities often purchase natural gas at prices tied to the index prices, and the prices of natural gas contracts are often based on index prices. Thus, traders who report false information to *Inside FERC* tend to affect the price of natural gas by pushing reported index pricing up or down, potentially costing gas and electricity consumers throughout the country considerable sums of money.

The indictment charges that Valencia knowingly reported to *Inside FERC* the volume and price data on natural gas trades that

2

never occurred.  The three counts under § 13(a)(2) arose from Valencia's alleged reporting of multiple fabricated trades, trades she allegedly knew never occurred, on three occasions, in November 2000, January 2001, and February 2001.

Valencia moved to dismiss these counts on multiple grounds, asserting that: (1) § 13(a)(2) is unconstitutional as vague; (2) the statute is unconstitutionally applied to the facts of the indictment; and (3) the statute is unconstitutionally overbroad. The district court granted Valencia's motion, dismissing counts one, two, and three in their entirety.  The court rejected Valencia's arguments that § 13(a)(2) is unconstitutionally vague and is unconstitutionally applied to the facts of the indictment. But the court granted the motion as to the overbreadth argument and held that because the statute could not be read to require knowledge that the information was false or misleading without rendering the second use of "knowingly" mere surplusage, the provision lacked the requisite scienter.  In other words, the district court read the statute to create a felony for the knowing delivery of a report not known to be false or misleading.  The statute, under this reading, would criminalize innocent conduct and infringe upon protected speech, and so the district court held it unconstitutional.

The Government filed a motion to reconsider, and the district court vacated its initial order.  Upon reconsideration, the court dismissed only those portions of the indictment charging that

3

Valencia knowingly delivered and caused to be delivered false and misleading reports. The district court permitted the portions of the indictment charging that Valencia knowingly delivered and caused to be delivered knowingly inaccurate reports to survive. The Government appeals this disposition.

## DISCUSSION

The district court's interpretation of the constitutionality of a federal statute is a question of law that this Court reviews *de novo*. *United States v. Hebert*, 131 F.3d 514, 525 (5th Cir. 1997). Here, we consider whether a portion of 7 U.S.C. § 13(a)(2) is unconstitutional as lacking the requisite *mens rea*, that is, knowledge that the reported information is false or misleading at the time of the knowing delivery.

Section 13(a)(2) of the CEA reads in relevant part:

It shall be a felony . . . for:
. . . .
(2) Any person to [1] manipulate or attempt to manipulate the price of any commodity in interstate commerce, or for future delivery on or subject to the rules of any registered entity, or [2] to corner or attempt to corner any such commodity or [3] <u>knowingly to deliver or cause to be delivered</u> for transmission through the mails or interstate commerce by telegraph, telephone, wireless, or other means of communication <u>false or misleading or knowingly inaccurate reports</u> concerning crop or market information or conditions that affect or tend to affect the price of any commodity in interstate commerce . . . .

7 U.S.C. § 13(a)(2) (2001) (emphasis added).[1]

---

[1]The district court referred to these three prongs, in order, as the manipulation prong, the cornering prong, and the

4

The parties' dispute is limited to the third or "reporting" prong of the subsection and presents the question of whether "knowingly" applies, as a matter of law, to only the delivery or also to the nature of reports as false or misleading. Both parties agree that the second appearance of "knowingly" modifies the inaccuracy of the reports. Valencia argues that a plain reading of the statute reveals that only the delivery be knowing or, in other words, that a felony lies where one knowingly delivers reports that are not known by the deliverer to be false or misleading. Therefore, she argues the statute is overbroad for criminalizing innocent conduct and infringing upon protected speech.

In construing the United States Code our task must begin with the words provided by Congress and the plain meaning of those words. *See Bailey v. United States*, 516 U.S. 137, 144-45 (1995); *Staples v. United States*, 511 U.S. 600, 605 (1994). In so doing, we give effect to the intent of Congress, and "as between two possible interpretations of a statute, by one of which it would be unconstitutional and by the other valid, our plain duty is to adopt that which will save the Act." *Blodgett v. Holden*, 275 U.S. 142, 148 (1927) (Holmes, J., concurring). These principles stem from respect afforded to Congress, "which we assume legislates in the light of

---

reporting prong.

5

constitutional limitations." *Rust v. Sullivan*, 500 U.S. 173, 191 (1991).

The Supreme Court recently reiterated its hesitance to encourage the facial attack to a statute's constitutionality on grounds of overbreadth. *Sabri v. United States*, 124 S. Ct. 1941, 1948-49 (2004). But in this instance, the plain language of the statute permits at least two readings, and the parties each champion one. Valencia echoes the district court and argues that Congress intended to create a felony when one knowingly delivers or causes to be delivered a report that is unknowingly false or misleading. The Government argues that the term "knowingly," when first used in the reporting prong of the statute, applies to both "deliver" and "false or misleading information" because scienter must be implied in statutes where it is not expressly included. *See United States v. X-Citement Video, Inc.*, 513 U.S. 64 (1994); *see also Dennis v. United States*, 341 U.S. 494 (1951) (holding statute with disjunctive use of "knowingly" requires specific intent).

The Government's position is correct. The rule requiring a statute be read to contain an adequate *mens rea* to avoid constitutional infirmity stems both from a canon of construction and Supreme Court precedent.[2]

---

[2]Although both parties additionally argue that the legislative history supports their respective positions, we find no salient assistance from those records and instead rely upon

6

In *X-Citement Video*, the Supreme Court addressed a similar construction problem and held that the most natural reading of the statute was properly rejected to avoid criminalizing innocent conduct. 513 U.S. at 78. The statute there in question, 18 U.S.C. § 2252(a) (1988 & Supp. V 1994), provided for the punishment of any person who knowingly transported any visual depiction if it involved the use of a minor engaging in sexually explicit conduct and it depicted such conduct. The Court held that the word "knowingly" modified all three portions of the subsection: (1) the transportation (which was undisputed); (2) the age of the performer in the visual depiction; and (3) the "sexually explicit nature of the material." *X-Citement Video*, 513 U.S. at 68, 78. Relying primarily on *Morissette v. United States*, 342 U.S. 246 (1952), and *Staples*, 511 U.S. 600 (1994), the majority stated: "the presumption in favor of a scienter requirement should apply to each of the statutory elements that criminalize otherwise innocent conduct." *X-Citement Video*, 512 U.S. at 72.

Before the Supreme Court decided *X-Citement Video*, a panel of this Circuit, in *United States v. Wallington*, 889 F.2d 573 (5th Cir. 1989), addressed the constitutionality of

--------------------------------------------

case law and principles of statutory construction to reach this result.

7

a statute penalizing information disclosure by government employees. The panel concluded that a construction of the statute saved it from constitutional infirmity, despite the reality that a plain reading might apply to a wide array of innocent conduct. Id. at 576-79. Thus, this Circuit has previously interpreted a potentially overbroad statute narrowly and "read an implicit *mens rea* requirement" into a criminal statute that is silent on the subject. *Id*. at 577-78.

*Wallington* does not, though, pointedly control the result in this case because § 13(a)(2) is not silent on the matter of the *mens rea* element but instead provides an explicit knowing requirement as to delivery and inaccuracy. Valencia argues, echoing the district court's reasoning, that this difference distinguishes *Wallington* and *X-Citement* and requires that § 13(a)(2) be held unconstitutional, at least as to a felony grounded in the knowing delivery of false or misleading reports. Valencia argues that, under *Bailey*, 516 U.S. at 145, and *United States v. Ceballo-Torres*, 218 F.3d 409 (5th Cir. 2000), we must give meaning to each word in the statute and render none superfluous. Valencia argues this cannot be accomplished by reading a scienter requirement into the false or misleading nature of the reports because to do so renders superfluous the word "knowingly" that Congress expressly

8

provided as modifying the inaccuracy of reports. We disagree.

Because *X-Citement Video* elevates a canon of statutory construction to a rule of law, 512 U.S. at 81 (Scalia, J., dissenting), we are guided by precedent in reading the first "knowingly" of § 13(a)(2) to modify both "false" and "misleading," as well as delivery. Scienter applies, even where none explicitly is provided. "The presumption in favor of scienter requires a court to read into a statute only that *mens rea* which is necessary to separate wrongful conduct from 'otherwise innocent conduct.'" *Carter v. United States*, 530 U.S. 255, 269 (2000) (citing *X-Citement Video*, 512 U.S. at 72).

Thus, this Court ultimately rejects one natural grammatical reading of the statute — the reading adopted by the district court that requires knowing delivery but not knowledge of the falsity or misleading character of the reports. Instead, we favor a construction of the statute that avoids criminalizing innocent conduct.

## CONCLUSION

Although a natural reading of § 13(a)(2) is consistent with the district court's determination that the reporting prong of the statute is overbroad and criminalizes innocent conduct, Supreme Court precedent mandates that the statute be read narrowly in order to prevent that outcome. Accordingly,

9

we hold the knowledge requirement of the reporting prong of § 13(a)(2) applies to the false or misleading character of the reports, as well as to delivery and inaccuracy.  The cause is REMANDED to the district court for further proceedings.

**REVERSED and REMANDED.**