# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued November 20, 2007       Decided June 27, 2008

No. 06-5361

VENETIAN CASINO RESORT, L.L.C.,
APPELLANT

v.

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,
APPELLEE

Appeal from the United States District Court
for the District of Columbia
(No. 00cv02980)

*Kenneth J. McCulloch* argued the cause for appellant. With him on the briefs were *Richard S. Rosenberg*, *John J. Manier*, *Steven D. Cundra*, and *Frederick H. Kraus*.

*Robin S. Conrad* and *Laura Anne Giantris* were on the brief for *amici curiae* Chamber of Commerce of the United States of America and Equal Employment Advisory Council.

*Alan Burch*, Assistant U.S. Attorney, argued the cause for appellee. With him on the brief were *Jeffrey A. Taylor*, U.S. Attorney, and *R. Craig Lawrence*, Assistant U.S. Attorney.

Before: GINSBURG, ROGERS, and GRIFFITH, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* GINSBURG.

GINSBURG, *Circuit Judge*: Seven years ago, Venetian Casino Resort, LLC repaired to district court for an injunction to keep the Equal Employment Opportunity Commission from disclosing certain confidential information without notice. The district court dismissed the case as unripe, but we held otherwise and remanded the case for proceedings on the merits. The district court then granted the Commission's motion for summary judgment and Venetian appealed, arguing the Commission's disclosure policy is unlawful. We agree, reverse, and remand the case for the district court to enter an injunction prohibiting the Commission from disclosing Venetian's confidential information pursuant to its current disclosure policy.

## I. Background

Venetian operates a hotel and casino in Las Vegas, Nevada. When it opened in 1999 it hired approximately 4,400 new employees out of 44,000 applicants. Numerous disappointed applicants filed complaints with the Commission alleging Venetian had violated various civil rights statutes, including, as relevant here, the Age Discrimination in Employment Act of 1967 (ADEA), 29 U.S.C. § 621 *et seq*.

To assist the Commission with its investigation of the ADEA claims, Venetian supplied the Commission with information that Venetian deemed, and identified as, confidential. The Commission subsequently issued a subpoena for more documents. In 2001, after the Commission denied Venetian's petition to revoke the subpoena, Venetian brought this action. It argued the Commission's policy, which

permits Commission employees to disclose an employer's confidential information to potential ADEA plaintiffs without first notifying the employer that its information will be disclosed, violates the Administrative Procedure Act (APA), the Freedom of Information Act (FOIA), and the Trade Secrets Act (TSA). In particular, Venetian contended the disclosure policy could not be reconciled with the Commission's own FOIA regulations, 29 C.F.R. § 1610.19 *et seq.*, which do require the Commission to notify an employer before disclosing its confidential documents to a third party pursuant to a FOIA request. Venetian's particular concern was that competitors and labor unions would obtain confidential information regarding its hiring practices, which information they would use to its economic detriment. Venetian also sought to enjoin disclosure as infringing its copyrights.

The district court dismissed the case as unripe. *Venetian Casino Resort, LLC v. EEOC* (*Venetian I*), 360 F. Supp. 2d 55, 60 (2004). We reversed, first noting that the case "presents a clear-cut legal question, i.e., whether the Commission's disclosure policy is inconsistent with the Trade Secrets Act, FOIA, or the APA." *Venetian Casino Resort, LLC v. EEOC* (*Venetian II*), 409 F.3d 359, 364-65 (D.C. Cir. 2005). We further concluded that Venetian would face the hardship necessary to make its claim ripe because, were review postponed, Venetian would be unable to prevent the Commission from disclosing the confidential information Venetian had already submitted. *Id.* at 365-66.

Turning to the merits of Venetian's complaint, we found the precise terms of the disclosure policy at issue quite uncertain. In the district court, the parties had focused upon the disclosure policy as it appeared in the EEOC Compliance Manual of 1987, which permitted the Commission to disclose without notice an employer's confidential information related

to an ADEA investigation. *Id.* at 361-62. On appeal, however, the Commission informed this court that the parties had been arguing about a version of the Compliance Manual that was no longer in use; it had been superseded by a new version, released in 1992 but never approved by the Commissioners of the EEOC.

The 1992 Manual is not clear either about what the policy of the Commission is. The introduction to Section 83.1 of the 1992 Manual states: "This section applies to ADEA [and Equal Pay Act] files, but only as set out in [§ 83.1(a)] below." The referenced subsection provides that information in an ADEA file related to an ongoing investigation may be disclosed either under the Commission's regulations implementing the FOIA or under its regulations implementing the Privacy Act. The former regulations explicitly require that when a third party makes a FOIA request for confidential commercial information, the Commission must notify the submitter before disclosing the information. 29 C.F.R. § 1610.19 *et seq.* The latter regulations permit, as a "routine use" of confidential information, disclosure of "pertinent information to a ... third party as may be appropriate or necessary to perform the Commission's functions under the [ADEA]." 56 Fed. Reg. 10,889, 10,889-90.

Venetian understood this "routine use" provision to mean that, absent a FOIA request, the Commission may disclose confidential information without first notifying the party that submitted it. According to the district court, counsel for the Commission had "unequivocally conceded" it might disclose Venetian's confidential information without notice. *Venetian II*, 409 F.3d at 362. At oral argument on appeal, however, counsel for the Commission first seemed to repudiate that position outright and then expressed uncertainty whether the Commission had any policy at all regarding the disclosure of confidential information. *Id.* at 362-63.

We concluded that "the record of this case is deficient, in part because the argument before the District Court was based on an outdated version of the agency's Manual and in part because the Commission's litigation position has been inconsistent." *Id.* at 367. Inasmuch as it remained "unclear what the disputed provision in the revised Manual means," we remanded the case to the district court "to ascertain the contours of the precise policy at issue. If Venetian's allegations turn out to be correct, the District Court must determine in the first instance whether the policy is contrary to law." *Id.*

On remand, the Commission submitted the affidavit of Nicholas Inzeo, its Director of Field Programs. He reported that "[t]he 1992 version of the EEOC compliance manual was never submitted to the Commissioners for approval, and the Commissioners never rescinded the 1987 version," but "EEOC employees rely on the 1992 version" nonetheless. Any difference between the two versions was immaterial, however:

> Neither version of section 83 requires EEOC field office staff to notify persons that have submitted information (confidential or otherwise) to EEOC during an investigation when a request for that information is received under section 83 or prior to release of information under section 83.

Inzeo added that "[n]othing in any EEOC policy ... is meant to contravene ... the Trade Secrets Act" and, in particular, that Section 83 does not authorize any conduct that would violate the TSA. Even though the introduction to Section 83.1 of the 1992 Manual states, "This section applies to ADEA ... files," Inzeo also declared:

Neither version of section 83 of the Compliance Manual applies to ADEA or EPA charge files, and both versions state that requests for information from closed ADEA ... charge files must be processed under the Freedom of Information Act.

The parties submitted dueling statements of undisputed facts. Venetian claimed the "EEOC's practice is to disclose confidential documents when it deems it appropriate or necessary, without prior notice to the submitter." In response, the Commission stated it follows the 1992 version of the Compliance Manual and "[t]he provisions of Section 83 speak for themselves." It conceded Section 83 does not require the Commission to notify submitters before releasing their confidential information, but represented that it had neither released nor decided to release any of Venetian's confidential information.

The district court determined that "[t]hough it is not definitively clear whether the 1987 or 1992 version constitutes the 'official version' of the manual, Section 83 is identical in all material aspects in the two versions." *Venetian Casino Resort, LLC v. EEOC* (*Venetian III*), 453 F. Supp. 2d 157, 160 n.3 (2006). The court "assum[ed] the EEOC ha[d] a disclosure policy or practice, written or otherwise, that allows the agency to release documents that the submitting party has identified as containing trade secrets and/or confidential material without first notifying the submitting party." *Id.* at 160 (emphasis and internal quotation marks omitted). The court then granted the Commission's motion for summary judgment on the ground that the policy was not arbitrary or capricious in violation of the APA because it did not violate any other statute or regulation. *Id.* at 162-68.

II. Analysis

We review the district court's grant of summary judgment de novo. *Galvin v. Eli Lilly & Co.*, 488 F.3d 1026, 1031 (D.C. Cir. 2007). Before proceeding to the legal analysis, we explain our factual conclusion that it is the Commission's policy to disclose confidential information without notice.

A. Factual posture

When reviewing a grant of summary judgment, we "view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in its favor." *Id.* (internal quotation marks omitted). If we determine there is a "genuine dispute concerning a material fact," which makes the case unsuitable for summary judgment, then we remand the case to the district court to resolve the factual issue. *Arrington v. United States*, 473 F.3d 329, 339 (D.C. Cir. 2007). In this case, unlike the district court, we do not merely "assume" the truth of Venetian's allegations: Their truth has been established.

Although the details of the Commission's disclosure policy are still unclear, the record leaves no doubt the Commission has a policy of disclosing confidential information without notice to the submitter. Venetian so asserted in its statement of undisputed facts before the district court and, although the Commission made several ambiguous statements, it never denied Venetian's description of the agency's policy.

Here are the Commission's assertions, in chronological order:

- Inzeo asserted in his Declaration, and the Commission in its brief confirms, "Neither version of section 83 of the Compliance Manual applies to ADEA or [Equal

Pay Act] charge files." We find this statement incredible inasmuch as § 83.1(a) of both the 1987 and the 1992 Manuals explicitly applies to ADEA files, and those are the very provisions Venetian challenges as unlawful.

- Inzeo also asserted in his Declaration that the Commission does not "violate the Trade Secrets Act." This is a legal conclusion and is not responsive to Venetian's claim that the Commission will disclose without notice information Venetian has labeled "confidential."

- In its statement of undisputed facts before the district court, the Commission asserted, "The provisions of Section 83 speak for themselves." This is, to say the least, surprising in light of this court's having previously found it "unclear what the disputed provision in the revised Manual means." *Venetian II*, 409 F.3d at 367. In any event, § 83 permits disclosure as authorized by the Commission's regulations implementing the Privacy Act, which in turn permits disclosure without notice "as may be appropriate or necessary to perform the Commission's functions under the [ADEA]." Such an open-ended statement of policy casts no doubt upon Venetian's allegation.

When directly questioned about the disclosure policy at oral argument, counsel for the Commission conceded employees of the Commission might disclose confidential information without notice:

Counsel: If the agency thought that the information had any chance of actually being [a trade secret] then they would tee up some sort of notice provision or something to ... create a decision as to whether the information was

confidential commercial information.

> The Court: What if you think it's not?
> ...
> Counsel: Then they would take their chances as to whether they're complying with the Trade Secrets Act.

(Oral Arg., 21:26-21:56). Counsel later reaffirmed this policy as follows:

> The Court: If a submitter marks a document as confidential ... what happens?
> ...
> Counsel: [T]he agency would need to decide whether it was going to refrain on the basis that ... it might actually be ... trade secret information. The agency could say the claim is obviously preposterous and proceed ... or the agency could send out notice to the submitter.

(Oral Arg., 26:25-27:18).

In sum, the Commission has never denied Venetian's allegations, even when styled as "statements of undisputed fact," and counsel for the Commission conceded their essential truth at oral argument. On this record it is clear the Commission has a policy of disclosing confidential information without notice; we proceed to the question whether that policy is lawful.

B. Administrative Procedure Act

Venetian challenges the Commission's disclosure policy primarily as a violation of the APA. It asks us to enjoin the Commission from disclosing its confidential information without notice because the policy is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."

5 U.S.C. § 706(2)(A). Before we proceed to the merits of Venetian's claim, we consider the Commission's argument that Venetian has no cause of action under the APA.

1. Cause of action

The Commission contends Venetian's claims are not cognizable under the APA for two reasons: Its policy (a) does not constitute "final agency action" and therefore is not reviewable pursuant to 5 U.S.C. § 704, and (b) is "committed to agency discretion by law" and therefore expressly made unreviewable by 5 U.S.C. § 701(a)(2). Neither reason persuades.

a. Final agency action

A "final agency action" within the meaning of the APA is "the consummation of the agency's decisionmaking process ... by which rights or obligations have been determined or from which legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997) (internal quotation marks omitted). The agency claims its Compliance Manual is not a "final agency action" because it is merely a guidance document that does not affect its own or the public's legal obligations.

This argument is misdirected because Venetian does not contend the Manual itself is a final agency action. Rather, Venetian challenges the decision of the Commission to adopt a policy of disclosing confidential information without notice. The Manual is relevant insofar as it illuminates the nature of the policy, but the agency took final action by adopting the policy, not by including it in the Manual.

Adopting a policy of permitting employees to disclose confidential information without notice is surely a "consummation of the agency's decisionmaking process," and

"one by which [the submitter's] rights [and the agency's] obligations have been determined." In sum, as we held in *Venetian II*, rejecting the Commission's challenge to the ripeness of Venetian's claims, "the question whether EEOC's disclosure policy is lawful presents a live and focused dispute emanating from agency action that is both final and consequential to Venetian." 409 F.3d at 367.

b. Committed to agency discretion by law

The Commission next argues that because the ADEA does not dictate the terms of its Manual or even require the issuance of a Manual, there are "no judicially manageable standards against which a court may analyze the [agency's] exercise of discretion," *Dickson v. Secretary of Defense*, 68 F.3d 1396, 1401 (D.C. Cir. 1995), and the contents of the Manual are therefore "committed to agency discretion by law." 5 U.S.C. § 701(a)(2). That the ADEA neither gives content to nor requires the Commission to issue a Compliance Manual is, however, irrelevant. Again, Venetian's challenge is not to the Manual but to the policy underlying it, to which we now turn.

2. The merits of the APA claim

Venetian asserts the policy of the Commission is arbitrary and capricious for two reasons: It violates the Trade Secrets Act and it is inconsistent with the Commission's own regulations governing FOIA requests.

a. The Trade Secrets Act

The TSA prohibits an officer or employee of the United States from disclosing "in any manner or to any extent not authorized by law any information coming to him in the course of his employment ... which ... concerns or relates to

the trade secrets ... of any ... firm." 18 U.S.C. § 1905. Although the TSA is a criminal statute and does not create a private right of action, the Supreme Court has held a party may file an action under the APA to enjoin an agency (and any employee thereof) from disclosing its confidential information in violation of the TSA. *Chrysler Corp. v. Brown*, 441 U.S. 281, 317-18 (1979).

As we recently explained, the protection provided by the TSA is at least as broad as that provided by Exemption 4 of the Freedom of Information Act, which

> protects "matters that are ... trade secrets and commercial or financial information obtained from a person and privileged or confidential." 5 U.S.C. § 552(b)(4). Commercial or financial information obtained from a person involuntarily "is 'confidential' for purposes of the exemption if disclosure [would] ... cause substantial harm to the competitive position of the person from whom the information was obtained." *Nat'l Parks & Conservation Ass'n v. Morton*, 498 F.2d 765, 770 (D.C. Cir. 1974); *see also Critical Mass Energy Project v. NRC*, 975 F.2d 871, 880 (D.C. Cir. 1992) (en banc) (adhering to *National Parks* with regard to commercial or financial information involuntarily submitted to the Government). We have long held the Trade Secrets Act ... is "at least co-extensive with ... Exemption 4 of FOIA." *CNA Fin. Corp. v. Donovan*, 830 F.2d 1132, 1151 (D.C. Cir. 1987). The upshot is that, unless another statute or a regulation authorizes disclosure of the information, the Trade Secrets Act requires each agency to withhold any information it may withhold under Exemption 4 of the FOIA. *Bartholdi Cable Co., Inc. v. FCC*, 114 F.3d 274, 281 (D.C. Cir. 1997).

*Canadian Comm. Corp. v. Air Force*, 514 F.3d 37, 39 (2008).

Venetian contends any disclosure of its confidential information is contrary to the TSA; moreover, because the Manual is not "a statute or regulation," it does not render disclosure of the information "authorized by law." This argument fails because disclosure of information does not violate the TSA merely because that information was labeled "confidential" by the submitter. Information is protected by the TSA only if its disclosure would "cause substantial harm to the competitive position of the person from whom the information was obtained." *National Parks*, 498 F.2d at 770.

According to the Inzeo Declaration, the Commission strives not to and does not disclose information in violation of the TSA; indeed, no employee of the Commission has ever been accused of having done so. At oral argument counsel for the Commission asserted that, when deciding whether to disclose information labeled confidential, the agency makes an independent assessment of whether the information is a trade secret. These statements are undisputed: Venetian presents no evidence the Commission has ever disclosed any information in violation of the Trade Secrets Act, and absent any such evidence we must presume the agency is acting in accordance with the law. *Horowitz v. Peace Corps*, 428 F.3d 271, 278 (D.C. Cir. 2005).

Venetian next argues that, should a Commission employee determine the release of a document Venetian has labeled confidential will not divulge a trade secret, it will not have the opportunity to contest and prevent the disclosure. If only Venetian were notified in advance that the Commission intended to disclose its confidential information, then Venetian could explain to the Commission why the document is a trade secret and, if the Commission is unconvinced, contest the matter in court; without notice, it is at risk of an uninformed and erroneous judgment by an agency employee that disclosure of its confidential information will not cause it

competitive harm.

Venetian's argument is not without force. Commission employees, who cannot be intimate with the circumstances of each of the more than 600,000 firms subject to the ADEA, *see* 29 U.S.C. § 630(b) (making ADEA applicable to any company with twenty or more employees); Statistics about Business Size from the U.S. Census Bureau, *available at* http://www.census.gov/epcd/www/smallbus.html (noting there were 629,940 firms with twenty or more employees in 2004), cannot be expected to anticipate the competitive implications of disclosing an employer's confidential information. Moreover, although we do not doubt Commission employees attempt in good faith to abide by the TSA, the Commission points to no reason to think they have an incentive to take the precaution of notifying the submitter before disclosing its information.[*]

In sum, an employee of the Commission is likely unable to assess accurately whether a document is a genuine trade secret before disclosing it. Therefore, although the agency's policy of disclosure without notice does not itself violate the TSA, it does increase the probability that an employee of the Commission will violate the TSA; according to Venetian, that alone makes the policy arbitrary and capricious.

---

[*]Criminal prosecution under the TSA seems particularly unlikely; such prosecutions are rare -- we have located no published report of such a case in our circuit -- and may be impossible if the employee was acting in good faith. *See United States v. Wallington*, 889 F.2d 573, 577-79 (5th Cir. 1989) (no TSA violation unless government employee was aware "disclosure is forbidden" by law, lest statute be unconstitutionally vague or "an overbroad restriction on the right of government employees to speak").

In its brief,[*] the Commission relies heavily upon *EEOC v. Associated Dry Goods Corp.*, 449 U.S. 590 (1981), and *University of Pennsylvania v. EEOC*, 493 U.S. 182 (1990). As the Commission acknowledges, however, those cases are relevant only to the question whether its disclosure policy is inconsistent with Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* -- and Venetian raises no issue of that sort. Indeed, the Court in the former case expressly noted that issues concerning the APA, the TSA, and the FOIA "are not now before us." 449 U.S. at 594 n.4.

The Commission supplies two explanations for its policy that do specifically reference the TSA. It first contends, without citing any authority, that the TSA "proscribes the behavior of individual officers and employees of the federal government, not that of agencies more generally," and pronounces this argument "insurmountable." Perhaps the absence of supporting citations is attributable to the Supreme Court's precisely contrary holding in *Chrysler Corp.*, the seminal case on the intersection between the APA and the TSA: "[W]e conclude that § 1905 [the TSA] does address

---

[*]Prior to this litigation the Commission never explained how it reconciles its disclosure policy under the Privacy Act with its obligations under the Trade Secrets Act. In these circumstances we review the explanation advanced in the agency's brief. *See Auer v. Robbins*, 519 U.S. 452, 462 (1997) ("Petitioners complain that the [agency]'s interpretation comes to us in the form of a legal brief; but that does not, in the circumstances of this case, make it unworthy of deference. The [agency]'s position is in no sense a '*post hoc* rationalization' ... There is simply no reason to suspect that the interpretation does not reflect the agency's fair and considered judgment on the matter in question.") (citation and alteration omitted); *Nat'l Wildlife Fed'n v. Browner*, 127 F.3d 1126, 1129 (D.C. Cir. 1997) (deferring to agency's litigation position when "there is nothing to suggest that the agency has ever before had any reason to address the issue").

formal agency action." 441 U.S. at 301.

The agency's second argument is more convincing: In the absence of any evidence it has violated the TSA in the past, it should not be required to adopt a policy in order to ensure it will not violate the TSA in the future. The policy does not violate the TSA in letter or in spirit, on its face or as applied thus far; the Commission has simply failed to adopt a prophylactic rule in order to reduce the probability that an employee will disclose a trade secret. Although the purpose of the TSA might well be furthered if the Commission gave submitters notice before disclosing their confidential information, the agency is not required "to take explicit account of public policies that derive from federal statutes other than the agency's enabling [a]ct." *Pension Benefit Guar. Corp. v. LTV Corp.*, 496 U.S. 633, 646 (1990).

The situation might look different if the Commission's disclosure policy, although not a violation of the TSA, routinely caused agency employees to violate that Act, but that is not the case. Indeed, in the Inzeo Declaration, the Commission not only reported that it knew of no employee ever having been accused of violating the TSA; it also stated it was committed to making a good-faith effort to abide by the TSA. In sum, we cannot find the Commission's disclosure policy is contrary to or otherwise frustrates the policy of the Trade Secrets Act and we therefore have no warrant in the Administrative Procedure Act for disturbing it on that ground.

b. The Commission's FOIA regulation

Venetian next argues the Commission's policy is arbitrary and capricious because it is inconsistent with the agency's regulations regarding requests made under the FOIA. Those regulations, which implement Executive Order 12,600, 52 Fed. Reg. 23781 (1987), require the Commission

to "provide a submitter with explicit notice of a FOIA request for confidential commercial records whenever ... the submitter previously, in good faith, designated the records as confidential commercial information." 29 C.F.R. § 1610.19(b)(3). They further oblige the Commission to afford the submitter the opportunity "to provide it with a detailed statement of objections to disclosure," *id.* § 1610.19(d), to "consider carefully the objections of a submitter," *id.* § 1619.19(e)(1), and, when it decides information should be disclosed notwithstanding such objections, to "provide the submitter with a written statement briefly explaining why the objections were not sustained ... in order that the submitter may seek a court injunction to prevent release of the records if it so chooses." *Id.*

Venetian and the two amici contend Section 83 of the Compliance Manual constitutes a "back door" that allows the Commission unlawfully to avoid the requirements of its own FOIA regulations. According to Venetian, the Commission can decline to notify the submitter of confidential information when it discloses the information to a third party as long as the disclosure is styled "disclosure under Section 83" rather than "disclosure under the FOIA." In its brief before this court, the only justification the Commission musters in response is the question-begging statement that because "the EEOC has not received a FOIA request ... for the Venetian's information ... the [FOIA regulations] do[] not ... apply to this case."[*]

---

[*]At oral argument counsel also offered a pragmatic, albeit subjective, justification for the Commission's failure to establish a formal policy of notifying the submitter before making a disclosure under Section 83: He was personally unaware of any previous instance in which a company had disclosed confidential commercial information to the EEOC and, because the situation "just doesn't come up," he thought it unnecessary "as a practical matter" to establish a formal notice procedure. He also volunteered his view

With this as the only cognizable justification for the Commission's policy, we cannot but agree with Venetian that the policy is arbitrary and capricious. To maintain two irreconcilable policies, one of which -- the Compliance Manual section relating to the Privacy Act -- apparently enables the agency or, for that matter, any person asking for information, to circumvent the other, *viz.*, the regulation implementing the FOIA and requiring pre-release notification, is arbitrary and capricious agency action. *See INS v. Yang*, 519 U.S. 26, 32 (1996) ("[A]n irrational departure from [a governing] policy ... constitute[s] action that must be overturned as 'arbitrary, capricious, or an abuse of discretion' within the meaning of the Administrative Procedure Act" (alteration omitted)).

We do not say the disclosure policy is necessarily contrary to law; perhaps the EEOC can yet supply a reasoned reconciliation of Compliance Manual § 83.1 and its regulations governing FOIA requests, preferably accompanied by a definitive explanation of exactly when each applies. Until then, however, the agency may not maintain its policy to Venetian's detriment. Venetian is entitled to an injunction against the release of its confidential information in any manner other than that prescribed in the Commission's FOIA regulations.

## III. Conclusion

---

that the information Venetian had disclosed was "unlikely to be the sort of information" that would be disclosed under Section 83. We do not consider these assertions because we cannot be confident such apparently extemporaneous arguments, which appear nowhere in the Commission's brief, "reflect the agency's fair and considered judgment on the matter." *Auer*, 519 U.S. at 462.

Absent an adequate justification, the Commission's disclosure policy must be deemed arbitrary and capricious. Therefore, we remand this case to the district court to enjoin the Commission from disclosing Venetian's confidential information without adhering to the notice and other requirements of the agency's regulations implementing the FOIA. The injunction may be dissolved if and when the Commission provides an explanation for its disclosure policy that satisfies the standards to which agency action must be held pursuant to the APA. *See Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985) ("[I]f the agency has not considered all relevant factors, or if the reviewing court simply cannot evaluate the challenged agency action on the basis of the record before it, the proper course ... is to remand to the agency for additional ... explanation").

*So ordered.*[*]

---

[*]Venetian also contends it is entitled to "an injunction restraining the EEOC from releasing its ... documents ... that [are] protected under the Federal Copyright Act," 17 U.S.C. § 101 *et seq.* The district court denied this claim on the merits because "[n]othing in the Act requires the establishment of particular internal agency procedures." 453 F. Supp. 2d at 166. This is true but not dispositive because the Act does entitle a copyright holder to an injunction barring infringement of its copyright. 17 U.S.C. § 502. Disclosure is not an act of infringement but reproduction is. *Id.* § 106.

This claim is not ripe for judicial review. Whether reproduction of a particular document would violate the Copyright Act depends upon the characteristics of that document, but the record indicates neither the precise nature of the documents Venetian has submitted nor of the documents, if any, the Commission intends to disclose. We note also that, should the EEOC infringe its copyright, Venetian has a remedy in damages. 17 U.S.C. § 504. We therefore vacate the judgment of the district court insofar as it denied Venetian's copyright claim on the merits;

on remand the district court should dismiss that claim as unripe.